LAW OFFICES OF JORGE R. SALVA, PLLC
Jorge R. Salva, Esq. (E.D.N.Y. Bar No.: JS0702)
*Attorney for Defendants*
116 West 23rd Street, Suite 500
New York, NY 10011
Tel (646) 375-2494
Email: jsalva@jrs-law.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------- X

AACE PHARMACEUTICALS INC, a New
Jersey Corporation, AARKISH
PHARMACEUTICALS NJ INC, a New Jersey            2:20-cv-14998-JMV-JBC
Corporation, and AARKISH
PHARMACEUTICALS LLC, a New Jersey
Limited Liability Company,                       **ANSWER & COUNTERCLAIM**

                      Plaintiffs

        v.

INFINITY MULTIVENTURES INC., a
Delaware Corporation, INFINITY
AARKISH VENTURES, LLC, a New
York Limited Liability Company,
SANJAY DAYMA, SANDEEP MEHTA and
VAIBHAV MANEK,

             Defendants.
-------------------------------------------

      Defendants INFINITY MULTIVENTURES INC., a Delaware Corporation, INFINITY

AARKISH VENTURES, LLC, a New York Limited Liability Company, SANJAY DAYMA,

SANDEEP MEHTA and VAIBHAV MANEK (together, "**Infinity Defendants**" or

"**Defendants**"), by and through their undersigned counsel, Law Offices of Jorge Salva, PLLC,  do

hereby answer the complaint by plaintiffs: AACE PHARMACEUTICALS INC, a New Jersey

Corporation, AARKISH PHARMACEUTICALS NJ INC, a New Jersey Corporation,  and

1

AARKISH PHARMACEUTICALS LLC, a New Jersey Limited Liability Company (together "**Plaintiffs**") as follows:

## PARTIES

1.      Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 1 of the Complaint and leave Plaintiffs to their proofs.

2.      Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 2 of the Complaint and leave Plaintiffs to their proofs.

3.      Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3 of the Complaint and leave Plaintiffs to their proofs.

4.      Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 4 of the Complaint and leave Plaintiffs to their proofs.

5.      Defendants admit that defendant Infinity Multiventures Inc. is a corporation organized under the laws of the State of Delaware ("**IMV**").  Defendants deny the remainder of the allegations contained in Paragraph 5 of the Complaint.

6.      Defendants admit that defendant Infinity Aarkish Ventures, LLC ("**Infinity Aarkish**") is a limited liability company organized under the laws of the State of New York.

7.      Defendants admit that defendant Sandeep Mehta ("**Sandeep**") is one of four (4) shareholders of IMV and also one of five (5) directors in plaintiffs AACE PHARMACEUTICALS INC ("**Ace Pharmaceuticals**") and AARKISH PHARMACEUTICALS NJ INC ("**Aarkish Pharmaceuticals**").

8.      Defendants admit that defendant Vaibhav Manek ("**Vaibhav**") is one of four (4) shareholders of IMV and also one of five (5) directors in each of plaintiffs Aace Pharmaceuticals and Aarkish Pharmaceuticals.

9.      Defendants admit that defendant Sanjay Dayma ("**Sanjay**") is one of four (4) shareholders of IMV and also an alternative director in plaintiffs Aace Pharmaceuticals and Aarkish Pharmaceuticals.

**PARTIES**

10.     The allegations contained in Paragraph 10 of the Complaint allege conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 10 of the Complaint.

11.     The allegations contained in Paragraph 11 of the Complaint allege conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 11 of the Complaint.

12.     The allegations contained in Paragraph 12 of the Complaint allege conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 12 of the Complaint.

**FACTS COMMON TO ALL COUNTS**

A.  **Background.**

13.     Defendants admit that IMV is a Delaware corporation formed on or about March 20, 2019.  Defendants further admit that the shareholders of IMV are Sandeep, Vaibhav, Sanjay, and Aria Strategies LLC, a New York limited liability company, each owning a 25% shareholder interest in IMV.  The managing members of Aria Strategies LLC are Mehreen (Mona) Shah, Esq. and Rebecca Singh, Esq., both attorneys admitted before the New York State Bar.  Prior to October 2020, Sandeep, Sanjay, Vaibhav, Mona Shah and Rebecca Singh are all directors in IMV. Defendants deny the remainder of the allegations contained in Paragraph 13 of the Complaint. In late October 2020, Ms. Singh and Ms. Shah resigned from the Board of Directors of IMV.

14.     Defendants admit that IMV is a party to a September 11, 2019 Shareholders Agreement for Aace Pharmaceuticals with plaintiff Aarkish Pharmaceuticals, LLC ("**Aarkish LLC**"), and non-parties Kameshwar Investment, LLC, a California corporation ("**Kameshwar**"), and S&O Pharma Corp. ("**S&O**"), a Pennsylvania corporation, with effective date of October 30, 2018 ("**the Aace Shareholders Agreement**", a copy of which is annexed as Exhibit A to the Complaint).  Defendants further admit that IMV is also a party to a Shareholders Agreement for Aarkish Pharmaceuticals with plaintiff Aarkish LLC, also with an effective date of October 30, 2018 ("**the Aarkish Shareholders Agreement**", a copy of which is annexed as Exhibit B to the Complaint, and together with Aace Shareholders Agreement, the "**Shareholder Agreements**"). To the extent the allegations of Paragraph 14 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves and Defendants deny the allegations to the extent that they are inconsistent with those documents.

15.     To the extent the allegations of Paragraph 15 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.  Defendants do not dispute that the President of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals is Atul Mehta. Defendants do not dispute that the Chief Executive Officer of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals is Ameet Vyas.

**B.  Shareholder Agreements.**

16.     Defendants admit that IMV is a party to the September 11, 2019 Shareholder Agreement for Aace Pharmaceuticals. To the extent the allegations of Paragraph 16 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those

documents speak for themselves and Defendants deny the allegations to the extent that they are inconsistent with those documents.

17.     Defendants admit that IMV is a party to the September 11, 2019 Shareholder Agreement for Aarkish Pharmaceuticals. To the extent the allegations of Paragraph 17 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves and Defendants deny the allegations to the extent that they are inconsistent with those documents.

18.     To the extent the allegations of Paragraph 18 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 18 of the Complaint further seeks to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in Aace Pharmaceuticals or Aarkish Pharmaceuticals (together, the "**Job Creating Enterprises**" or "**JCEs**"), Defendants deny those allegations therein.

19.     To the extent the allegations of Paragraph 19 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 19 of the Complaint further seek to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in the Job Creating Enterprises, Defendants deny those allegations therein.

20.     To the extent the allegations of Paragraph 20 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 20 of the Complaint further seek to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in the Job Creating Enterprises, Defendants deny those allegations therein.

21.     To the extent the allegations of Paragraph 21 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 21 of the Complaint further seek to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in the Job Creating Enterprises, Defendants deny those allegations therein.

22.     To the extent the allegations of Paragraph 22 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

23.     To the extent the allegations of Paragraph 23 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

24.     To the extent the allegations of Paragraph 24 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 24 of the Complaint further seek to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in the Job Creating Enterprises, Defendants deny those allegations therein.

25.     Defendants admit that since October 30, 2018, Infinity Aarkish has wired $1,410,000.00 to a bank account for Aace Pharmaceuticals jointly controlled and operated by Plaintiffs and Defendants; and that Infinity Aarkish has delivered another $940,000.00 to a second bank account for Aarkish Pharmaceuticals jointly controlled and operated by Plaintiffs and Defendants (together the "**JCE Joint Accounts**"), and from said second Joint Account $850,000.00 was wired to Lupaks Construction Company, L.L.C. per the instructions of Atul

Mehta and Ameet Vyas.  Defendants deny the remainder of the allegations contained in Paragraph 25 of the Complaint.

   **C.  EB-5 Investor Immigration Program.**

   26.    To the extent the allegations of Paragraph 26 of the Complaint seek to paraphrase or characterize the content of Infinity Aarkish's Private Offering Memorandum, and other Offering Documents (as defined in Paragraph 29 below), those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

   27.    Admitted.

   28.    To the extent the allegations of Paragraph 28 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

   29.    Defendants admit that Mona Shah and Associates, PLLC d/b/a MSA Global, an immigration law firm headquartered at 232 Madison Avenue, Suite 1001, New York, NY 10016 ("**MSA Global**") drafted the principal offering documents for review by U.S. and non-U.S. prospective investors (including Vaibhav Manek and Sandeep Mehta, who are themselves investors) of the membership interests in Infinity Aarkish ("**Membership Interests**"), including but not limited to the Private Offering Memorandum ("**POM**"), Subscription Agreements, Limited Liability Operating Agreement, and other related documents (together the "**Offering Documents**").  Defendants further admit that they are not registered broker-dealers with the Securities & Exchange Commission (the "**SEC**"), a fact which Plaintiffs and their senior officers Atul Mehta and Ameet Vyas, who also control the Board of both JCEs (together, the "**Plaintiff Insiders**"), knew since the commencement of the parties' business relationship. To the extent that Section 15 of the Securities & Exchange Act of 1934 might apply, Defendants are covered under

the Safe Harbor exemptions under Rule 3a4-1, codified as 17 CFR § 240.3a4-1, for an issuer and an issuers officers and other persons, associated with the issuer.

30.      Infinity Aarkish offered membership Interests in the Company through a private offering (the "**Offering**") to non-U.S. Persons (as defined in Rule 901 under Regulation S under the Securities Act) who are "**accredited investors**" as defined in Rule 501 of Regulation D under the Securities Act, and in reliance on exemptions from the registration requirements under the Securities Act of 1933, as amended (the "**Securities Act**").  In the same Offering, Infinity Aarkish further reserved the right to offer the Membership Interests within the U.S., and to U.S. Persons, under Rule 506(c) of Regulation D, which permits issuers to broadly solicit and generally advertise an offering, provided that all purchasers are accredited investors, and that the issuer take reasonable steps to verify investors' accredited investor status.  Validation of accredited investor status and source of EB-5 Funds was undertaken by MSA Global and Mona Shah, Esq. To the extent Plaintiffs allege other conclusions of law, an answer is not otherwise required.

31.      Defendants respectfully refer Plaintiffs and the Court to Defendants' above response to Paragraph 30 of the Complaint, as also the response to Paragraph 31 of the Complaint. To the extent Plaintiffs allege other conclusions of law, an answer is not otherwise required.

32.      Defendants respectfully refer Plaintiffs and the Court to Defendants' above response to Paragraph 30 of the Complaint, as also the response to Paragraph 32 of the Complaint. To the extent Plaintiffs allege other conclusions of law, an answer is not otherwise required.

33.      To the extent the allegations of Paragraph 33 of the Complaint seek to paraphrase or characterize the content of the POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

34.     The allegations contained in Paragraph 34 of the Complaint contain only conclusions of law for which an answer is not required.

35.     The allegations contained in Paragraph 35 of the Complaint contain only conclusions of law for which an answer is not required.

36.     The allegations contained in Paragraph 36 of the Complaint contain only conclusions of law for which an answer is not required.

37.     The allegations contained in Paragraph 37 of the Complaint contain only conclusions of law for which an answer is not required.

38.     To the extent the allegations of Paragraph 38 of the Complaint seek to paraphrase or characterize the content of the POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

39.     To the extent the allegations of Paragraph 39 of the Complaint seek to paraphrase or characterize the content of the POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

40.     Defendants admit that Infinity Aarkish is a party to two (2) separate loan agreements each with Aace Pharmaceuticals and Aarkish Pharmaceuticals respectively, together with Promissory Notes executed by the JCEs on July 26, 2019 and by Infinity Aarkish on August 5, 2019 (together, the **"Loan Agreements"**, copies of which are attached as Exhibits C and D respectively to the Complaint).  To the extent the allegations of Paragraph 40 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, POM and other Offering

Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

41.     To the extent the allegations of Paragraph 41 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

42.     Defendants deny knowledge or information sufficient to form a belief as to the truth of all of the allegations contained in Paragraph 42 of the Complaint, and leave Plaintiffs to their proofs.

43.     To the extent the allegations of Paragraph 43 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

44.     To the extent the allegations of Paragraph 44 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

45.     To the extent the allegations of Paragraph 45 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, POM and other Offering Documents, those documents speak for themselves.  To the extent Plaintiffs further seek to characterize or allege that Defendants had no discretion to the disbursements of loan proceeds to Plaintiffs, Defendants deny the allegations contained in Paragraph 45.

46.     Defendants admit that since October 30, 2018, Infinity Aarkish has wired $1,410,000.00 to the Aace Pharmaceuticals Joint Account; and another $940,000.00 to the Aarkish

Pharmaceuticals Joint Account per the instructions of Mona Shah, Esq. and MSA Global. Thereafter, Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction Company, L.L.C., a New Jersey construction contractor ("**Lupaks Construction**"), in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020 (together the "**Lupaks Proceeds**"), per the direction of Atul Mehta and Ameet Vyas.  Defendants further admit that the proceeds of the foregoing originated from investments by seven (7) EB-5 investors, two (2) of which are Vaibhav Manek and Sandeep Mehta, defendants in this action.  In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 46 of the Complaint.

47.     Defendants deny all of the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny all of the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants deny all allegations contained in Paragraph 49 of the Complaint to the extent Plaintiffs allege that Defendants' acts or conduct contributed to or are responsible for the delays, expenses, costs, and other adverse business events alleged by Plaintiffs.  Defendants further

deny knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 49 of the Complaint, and leave Plaintiffs to their proofs.

## AS FOR COUNT ONE

50.     Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

51.     To the extent the allegations of Paragraph 51 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

52.     Defendants admit that since October 30, 2018, Infinity Aarkish has wired $1,410,000.00 to the Joint Bank Account for Aace Pharmaceuticals, and another $940,000.00 to the Aarkish Pharmaceuticals Joint Account.   Thereafter, Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020, per the direction of Atul Mehta and Ameet Vyas.  The Joint Account for Aace Pharmaceutical currently maintains a balance of $1,410,000; the Joint Account for Aarkish Pharmaceuticals continues to hold a balance of $90,000.  Defendants further admit that the proceeds of the foregoing originated from investments by seven (7) EB-5 investors, two (2) of which are Vaibhav Manek and Sandeep Mehta, defendants in this action.  In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as

not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 52 of the Complaint.

53.     Defendants deny all of the allegations contained in Paragraph 53 of the Complaint.

54.     To the extent the allegations of Paragraph 54 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

55.     Defendants admit that a POM and other Offering Documents were distributed to certain U.S. and non-U.S. prospective accredited investors, as defined in Rule 501 of Regulation D under the Securities Act, and in reliance on exemptions from the registration requirements thereunder, in a Private Offering of Membership Interests in Infinity Aarkish.  To the extent the allegations of Paragraph 55 of the Complaint seek to paraphrase or characterize the content of the POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

56.     To the extent the allegations of Paragraph 56 of the Complaint seek to paraphrase or characterize the content of the POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

57.     Defendants admit that seven (7) EB-5 investors, including defendants Vaibhav Manek and Sandeep Mehta, have committed $3,500,000 to Infinity Aarkish, of which Infinity Aarkish has received a total of $2,700,000.  Out of that $2,700,000, Infinity Aarkish held back $350,000 in a separate escrow account at Signature Bank under the terms disclosed in the PPM,

and a separate escrow agreement attached thereto.  The remaining $2,350,000.00 was allocated by Infinity Aarkish as follows: $1,410,000.00 to the Aace Pharmaceuticals Joint Account; and another $940,000.00 to the Aarkish Pharmaceuticals Joint Account per the instructions of Mona Shah, Esq. and MSA Global.  Thereafter, Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020, per the direction of Atul Mehta and Ameet Vyas. The Joint Account for Aace Pharmaceutical currently maintains a balance of $1,410,000; the Joint Account for Aarkish Pharmaceuticals continues to hold a balance of $90,000.  To the extent the allegations of Paragraph 57 of the Complaint further seek to paraphrase or characterize the content of the Shareholders Agreements and the Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

58.     Defendants admit that in light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors, so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 58 of the Complaint.

59.     Defendants deny all of the allegations contained in Paragraph 59 of the Complaint.

60.     The allegations contained in Paragraph 60 of the Complaint alleges conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 60 of the Complaint.

61.     The allegations contained in Paragraph 61 of the Complaint contain only conclusions of law for which an answer is not required.

62.     The allegations contained in Paragraph 62 of the Complaint contain only conclusions of law for which an answer is not required.

63.     Defendants admit to discussions with a limited number of prospective EB-5 accredited investors regarding Infinity Aarkish's private Offering of Membership Interests, made in reliance on the exemptions from the registration requirements under the Securities Act, and Regulation D thereunder.  Defendants are also covered under the under the Safe Harbor exemptions under Rule 3a4-1, codified as 17 CFR § 240.3a4-1, for an issuer and an issuers officers and other persons, associated with the issuer.  Defendants deny the remaining allegations contained in Paragraph 63 of the Complaint.

64.     Defendants deny all of the allegations contained in Paragraph 64 of the Complaint.

65.     The allegations contained in Paragraph 65 of the Complaint alleges conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 65 of the Complaint.

66.     Defendants deny all of the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants deny all of the allegations contained in Paragraph 67 of the Complaint.

68.     Defendants admit that Atul Mehta chose to initiate wires of $100,000 each to Vaibhav Manek's and Sandeep Mehta's personal bank accounts in India in partial payment of their professional fees and reimbursement of out-of-pocket expenses incurred by Defendants.  At no

point prior to disbursement did Atul Mehta advise Defendants as to the source of the proceeds wired from the bank account plaintiff Aarkish Pharmaceuticals LLC, an account not shared with the Defendants.  Upon the later advice of their prior legal counsel, Vaibhav Manek and Sandeep Mehta promptly remedied and reimbursed the $200,000 from these same personal accounts back to Aarkish Pharmaceuticals LLC.  Defendants deny the remainder of the allegations contained in Paragraph 68.

69.     Defendants deny all of the allegations contained in Paragraph 69 of the Complaint.

70.     Defendants deny all of the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants deny all of the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants deny all of the allegations contained in Paragraph 72 of the Complaint.

73.      To the extent the allegations of Paragraph 73 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

74.     Defendants deny all of the allegations contained in Paragraph 74 of the Complaint.

75.     To the extent the allegations of Paragraph 75 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

76.     Defendants admit that a POM and other Offering Documents were distributed to certain U.S. and non-U.S. prospective accredited investors, as defined in Rule 501 of Regulation D under the Securities Act, and in reliance on exemptions from the registration requirements thereunder, in a private Offering of Membership Interests in Infinity Aarkish.  Defendants are also covered under the under the Safe Harbor exemptions under Rule 3a4-1, codified as 17 CFR § 240.3a4-1, for an issuer and an issuers officers and other persons, associated with the issuer.  Mona

Shah, Rebecca Singh along with their office at MSA Global marketed this Offering amongst their chosen set of investors within the US.  Defendants deny all of the remaining allegations contained in Paragraph 76 of the Complaint.

77.     To the extent the allegations of Paragraph 77 of the Complaint seek to paraphrase or characterize the content of the POM and other Offering Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

78.     Defendants admit that seven (7) EB-5 investors, including defendants Vaibhav Manek and Sandeep Mehta, have committed $3,500,000 to Infinity Aarkish, of which Infinity Aarkish has received a total of $2,700,000.  Defendants deny knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 78 of the Complaint and leave Plaintiffs to their proofs.

79.     Defendants deny all of the allegations contained in Paragraph 79 of the Complaint.

80.     Defendants deny all of the allegations contained in Paragraph 80 of the Complaint.

81.     To the extent the allegations of Paragraph 81 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

82.     Defendants admit that seven (7) EB-5 investors, including defendants Vaibhav Manek and Sandeep Mehta, have committed $3,500,000 to Infinity Aarkish, of which Infinity Aarkish has received a total of $2,700,000.  Defendants deny all of the remaining allegations contained in Paragraph 82 of the Complaint.

83.     Defendants admit that Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction Company, L.L.C. in two (2) installments, the first for $500,000

on December 31, 2019, and the second for $350,000 on January 21, 2020 (together the "**Lupaks Proceeds**"), per the direction of Atul Mehta and Ameet Vyas.  In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 83 of the Complaint.

84.     Defendants deny all of the allegations contained in Paragraph 84 of the Complaint.

85.     In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 85 of the Complaint.

86.     Defendants deny all of the allegations contained in Paragraph 86 of the Complaint.

87.     Defendants deny all of the allegations contained in Paragraph 87 of the Complaint.

88.     Defendants deny all of the allegations contained in Paragraph 88 of the Complaint.

**AS FOR COUNT TWO**

89.     Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

90.     Defendants deny all of the allegations contained in Paragraph 90 of the Complaint.

91.     Defendants deny all of the allegations contained in Paragraph 91 of the Complaint.

92.     Defendants deny all of the allegations contained in Paragraph 92 of the Complaint.

93.     To the extent the allegations of Paragraph 93 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

94.     To the extent the allegations of Paragraph 94 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

95.     Defendants deny all of the allegations contained in Paragraph 95 of the Complaint.

96.     Defendants admit that Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction Company, L.L.C. in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020, per the direction of Atul Mehta and Ameet Vyas.  In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish

Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 96 of the Complaint.

97.     Defendants respectfully refer Plaintiffs and the Court to Defendants' above response to Paragraph 96 of the Complaint, as also the response to Paragraph 97 of the Complaint. Defendants deny the remainder of the allegations contained on Paragraph 97 of the Complaint.

98.     Defendants deny all of the allegations contained in Paragraph 98 of the Complaint.

99.     Defendants deny all of the allegations contained in Paragraph 99 of the Complaint.

100.     Defendants deny all of the allegations contained in Paragraph 100 of the Complaint.

101.     Defendants deny all of the allegations contained in Paragraph 101 of the Complaint.

## AS FOR COUNT THREE

102.     Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

103.     To the extent the allegations of Paragraph 103 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

104.     To the extent the allegations of Paragraph 104 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

105.     Defendants admit that in October 2020 they received correspondence for Plaintiffs of their intent to terminate the Shareholders Agreements, but that such termination was unlawful

and without any legal or factual basis.  Defendants deny the remainder of the allegations contained in Paragraph 105 of the Complaint.

106.   Defendants deny all of the allegations contained in Paragraph 106 of the Complaint.

107.   Defendants admit that in October 2020 they received correspondence for Plaintiffs of their intent to terminate the Shareholders Agreements, but that such termination was unlawful and without any legal or factual basis.  Defendants deny the remainder of the allegations contained in Paragraph 107 of the Complaint.

108.   Defendants deny all of the allegations contained in Paragraph 108 of the Complaint.

109.   Defendants deny all of the allegations contained in Paragraph 109 of the Complaint.

### AS FOR COUNT FOUR

110.   Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

111.   Defendants deny all of the allegations contained in Paragraph 111 of the Complaint.

112.   Defendants deny all of the allegations contained in Paragraph 112 of the Complaint.

113.   Defendants deny all of the allegations contained in Paragraph 113 of the Complaint.

114.   Defendants deny all of the allegations contained in Paragraph 114 of the Complaint.

115.   Defendants admit that seven (7) EB-5 investors, including defendants Vaibhav Manek and Sandeep Mehta, have committed $3,500,000 to Infinity Aarkish, of which Infinity Aarkish has received a total of $2,700,000. Defendants deny all of the other allegations contained in Paragraph 115 of the Complaint.

116.   Defendants admit that Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction Company, L.L.C. in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020, per the direction of Atul

21

Mehta and Ameet Vyas.  In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 116 of the Complaint.

117.    Defendants deny all of the allegations contained in Paragraph 117 of the Complaint.

118.    Defendants deny all of the allegations contained in Paragraph 118 of the Complaint.

119.    Defendants deny all of the allegations contained in Paragraph 119 of the Complaint.

120.    Defendants deny all of the allegations contained in Paragraph 120 of the Complaint.

121.    Defendants deny all of the allegations contained in Paragraph 121 of the Complaint.

122.    Defendants admit that Atul Mehta and Ameet Vyas represented to Defendants that they intended that Aace Pharmaceuticals and Aarkish Pharmaceuticals serve as job creating enterprises, as contemplated under the EB-5 Program.  Defendants deny the remainder of the allegations contained on Paragraph 122 of the Complaint.

123.    Defendants deny knowledge or information sufficient to form a belief as to the truth of all of the allegations contained in Paragraph 123 of the Complaint and leave Plaintiffs to their proofs.

124.    Defendants deny all of the allegations contained in Paragraph 124 of the Complaint.

125.    Defendants deny all of the allegations contained in Paragraph 125 of the Complaint.

126.    Defendants deny all of the allegations contained in Paragraph 126 of the Complaint.

127.    To the extent the allegations of Paragraph 127 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 127 of the Complaint further seeks to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in Aace Pharmaceuticals or Aarkish Pharmaceuticals, Defendants deny those allegations therein.

128.    Defendants deny all of the allegations contained in Paragraph 128 of the Complaint.

129.    To the extent the allegations of Paragraph 129 of the Complaint seek to paraphrase or characterize the content of the Shareholders Agreements, those documents speak for themselves.  To the extent that Paragraph 129 of the Complaint further seeks to allege, limit, or characterize the Defendants' shareholder status or any shareholder rights in Aace Pharmaceuticals or Aarkish Pharmaceuticals, Defendants deny those allegations therein.

130.    Defendants deny all of the allegations contained in Paragraph 130 of the Complaint.

131.    Defendants deny all of the allegations contained in Paragraph 131 of the Complaint.

132.    Defendants deny all of the allegations contained in Paragraph 132 of the Complaint.

133.    Defendants deny all of the allegations contained in Paragraph 133 of the Complaint.

134.    Defendants deny all of the allegations contained in Paragraph 134 of the Complaint.

## AS FOR COUNT FIVE

135.    Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

136.    Defendants deny all of the allegations contained in Paragraph 136 of the Complaint.

137.     To the extent the allegations of Paragraph 137 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

138.     To the extent the allegations of Paragraph 138 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

139.     The allegations contained in Paragraph 139 of the Complaint alleges conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 139 of the Complaint.

140.     The allegations contained in Paragraph 140 of the Complaint alleges conclusions of law, which do not require an answer.  To the extent that a response is required, Defendants deny the allegations contained Paragraph 140 of the Complaint.

141.     Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 141 of the Complaint and leave Plaintiffs to their proofs.

142.     Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 142 of the Complaint and leave Plaintiffs to their proofs.

143.     To the extent the allegations of Paragraph 143 of the Complaint seek to paraphrase or characterize the content of the Shareholder Agreements, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

144.     Defendants deny all of the allegations contained in Paragraph 144 of the Complaint.

145.     Defendants deny all of the allegations contained in Paragraph 145 of the Complaint.

146.     Defendants deny all of the allegations contained in Paragraph 146 of the Complaint.

147.     Defendants deny all of the allegations contained in Paragraph 147 of the Complaint.

148.    Defendants deny all of the allegations contained in Paragraph 148 of the Complaint.

## AS FOR COUNT SIX

149.    Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

150.    Defendants deny all of the allegations contained in Paragraph 150 of the Complaint.

151.    Defendants deny all of the allegations contained in Paragraph 151 of the Complaint.

152.    Defendants deny all of the allegations contained in Paragraph 152 of the Complaint.

153.    Defendants deny all of the allegations contained in Paragraph 153 of the Complaint.

154.    Defendants deny all of the allegations contained in Paragraph 154 of the Complaint.

155.    Defendants deny all of the allegations contained in Paragraph 155 of the Complaint.

156.    Defendants deny all of the allegations contained in Paragraph 156 of the Complaint.

157.    Defendants deny all of the allegations contained in Paragraph 157 of the Complaint.

158.    Defendants deny all of the allegations contained in Paragraph 158 of the Complaint.

159.    Defendants deny all of the allegations contained in Paragraph 159 of the Complaint.

160.    Defendants deny all of the allegations contained in Paragraph 160 of the Complaint.

161.    Defendants deny all of the allegations contained in Paragraph 161 of the Complaint.

162.    Defendants deny all of the allegations contained in Paragraph 162 of the Complaint.

163.    Defendants deny all of the allegations contained in Paragraph 163 of the Complaint.

164.    Defendants deny all of the allegations contained in Paragraph 164 of the Complaint.

## AS FOR COUNT SEVEN

165.    Defendants incorporate all preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

166.    Defendants admit that Infinity Aarkish is a party to two (2) separate loan agreements each with Aace Pharmaceuticals and Aarkish Pharmaceuticals respectively, together with Promissory Notes executed by the JCEs on July 26, 2019 and by Infinity Aarkish on August 5, 2019 (together, the **"Loan Agreements"**, copies of which are attached as Exhibits C and D respectively to the Complaint).

167.    To the extent the allegations of Paragraph 167 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

168.    To the extent the allegations of Paragraph 168 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

169.    To the extent the allegations of Paragraph 169 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves, and Defendants deny the allegations to the extent that they are inconsistent with those documents.

170.    To the extent the allegations of Paragraph 170 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves.  To the extent Plaintiffs further seek to characterize or allege that Defendants had no discretion to the disbursements of loan proceeds to Plaintiffs, Defendants deny the allegations contained in Paragraph 170.

171.    To the extent the allegations of Paragraph 171 of the Complaint seek to paraphrase or characterize the content of the Loan Documents, those documents speak for themselves.  To the extent Plaintiffs further seek to characterize or allege that Defendants had no discretion to the

disbursements of loan proceeds to Plaintiffs, Defendants deny the allegations contained in Paragraph 171.

172.    Defendants admit that seven (7) EB-5 investors, including defendants Vaibhav Manek and Sandeep Mehta, have committed $3,500,000 to Infinity Aarkish, of which Infinity Aarkish has received a total of $2,700,000.  Defendants deny the remaining allegations contained in Paragraph 172 of the Complaint.

173.    Defendants admit that Aarkish Pharmaceuticals wired $850,000.00 from its Joint Account to Lupaks Construction Company, L.L.C. in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020, per the direction of Atul Mehta and Ameet Vyas.  In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.  Defendants deny the remainder of the allegations contained on Paragraph 173 of the Complaint.

174.    Defendants respectfully refer Plaintiffs and the Court to Defendants' above response to Paragraph 173 of the Complaint, as also the response to Paragraph 174 of the Complaint. Defendants deny the remainder of the allegations contained in Paragraph 174 of the Complaint.

175.    Defendants deny all of the allegations contained in Paragraph 175 of the Complaint.

176.    Defendants deny all of the allegations contained in Paragraph 176 of the Complaint.

## AS TO PRAYERS FOR RELIEF

Defendants denies Plaintiffs' all of the allegations contained in Plaintiffs' prayer for relief (Paragraphs A through M all inclusive), and aver that Plaintiffs are not entitled to any of the relief requested therein or any other relief.

## AFFIRMATIVE DEFENSES

Defendants make the following allegations as affirmative defenses to the Complaint without admitting that it bears the burden of persuasion or presentation of evidence on each or any of these matters.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state facts sufficient to constitute a claim upon which relief against Defendants can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because he has not sustained any injury or damage by reason of any act or omission of Defendants or any of their officers, employees, personnel or agents.

## THIRD AFFIRMATIVE DEFENSE

Defendants have not made any material misrepresentations or fraudulent statements or omissions to Plaintiffs, or any of their officers, employees, personnel or agents, including but not limited to Atul Mehta and Ameet Vyas.

## FOURTH AFFIRMATIVE DEFENSE

Defendants further admit that they are not registered broker-dealers with the Securities & Exchange Commission , a fact which Plaintiffs and their senior officers Atul Mehta and Ameet

Vyas knew since the commencement of the parties' business relationship that Defendants are not registered broker-dealers with the Securities & Exchange Commission (the "**SEC**").  To the extent that Section 15 of the Securities & Exchange Act of 1934 might apply, Defendants are covered under the under the Safe Harbor exemptions under Rule 3a4-1, codified as 17 CFR § 240.3a4-1, for an issuer and an issuers officers and other persons, associated with the issuer.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to join necessary and indispensable parties to this action without whom this action cannot proceed.

## SIXTH AFFIRMATIVE DEFENSE

In light of Plaintiffs' and Plaintiff Insiders' utter lack of transparency and their refusal to produce invoices, work orders, purchase orders, and other documents verifying Plaintiffs' intended use of proceeds for any further disbursements, Defendants have in good faith withheld additional disbursements additional disbursements to: (i) plaintiff Aarkish Pharmaceuticals LLC; or (ii) to other bank accounts of Aace Pharmaceuticals and Aarkish Pharmaceuticals opaque to oversight by the Infinity Defendants and the EB-5 Investors so as not to unwittingly make any disbursement in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other applicable law and regulations.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant IMV has made monetary capital contributions, sweat equity, and other substantial consideration to the Job Creating Enterprises, and as such is a shareholder in both Aace Pharmaceuticals and Aarkish Pharmaceuticals and has shareholder rights to the fullest extent

contemplated under the New Jersey Corporation Act codified as NJ Rev Stat § 14A:1-1, *et seq.* and other applicable law.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands, as Plaintiffs, and their senior officers, Atul Mehta, Ameet Vyas (who also control the Board of both JCEs), and other third-parties in control of Plaintiffs have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward defendant IMV and other minority shareholders pursuant to  N.J.S.A. 14A:12-7(1)(c).

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs, together with Atul Mehta and Ameet Vyas, have depleted, diverted, misappropriated, and misused cash and monetary assets, including but not limited to EB-5 Funds towards personal loans and other expenditures not related to job creating purposes, in conflict with the "*Use of Proceeds*" disclosures in the POM, in violation of applicable immigration and securities law, and most significantly jeopardizing the cash investments, let alone the I-526 application, made by the seven (7) EB-5 investors.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs, together with Atul Mehta and Ameet Vyas, made numerous misrepresentations, untrue statements, and omissions regarding their intend misuse and misappropriation of EB-5 Funds towards personal loans and other expenditures not related to job creating purposes, in conflict with the "*Use of Proceeds*" disclosures in the POM, in violation of applicable immigration and securities law, and most significantly jeopardizing the cash investments, let alone the I-526 application, made by the seven (7) EB-5 investors.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs, together with Atul Mehta, and Ameet Vyas, deliberately and wrongfully interfered with and sabotaged Defendants' ability and efforts to raise the $5,000,000.00 capital contributions contemplated under the Shareholders' Agreements and Loan Agreements, and their further lack of transparency and cooperation as to the business and economic affairs of the Job Creating Enterprises frustrated Defendants' efforts to otherwise fully perform their duties and other contractual obligations under the parties' agreements.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs have no legal basis or factual basis to lawfully rescind or void their obligations to Defendants under the Shareholder Agreements, Loan Agreements, and the parties' other enforceable agreements, including but not limited to IMV's right to appoint directors and its veto powers in connection with certain transactions including, "*any change in the structure, size, or composition of the Board*"; (ii) "*any investment, or the liquidation of any investment made by the Company, in any other person, entity or business*"; and (iii) "*review and approval of Company policies and procedures regarding management of financial accounts, execution of legal documents, applicable ethical rules and ethical practices and other important matters including but not limited to any act that might be to the detriment of the Company. . . provided however that it first obtain the prior written consent of [IMV] or its appointed director*".   (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 8.2(b) (emphasis added).

**THIRTEENTH AFFIRMATIVE DEFENSE**

The good faith refusal by Defendants to aid, assist, or additional disbursements to plaintiff Aarkish Pharmaceuticals LLC and the Plaintiff Insiders to misuse, misappropriate, or divert EB5-Funds in breach of the disclosures of the POM, or otherwise in violation of the statutes, rules and guidelines under the EB-5 Program, as well as other U.S. immigration, securities, and other

applicable law and regulations, is protected under the Shareholders Agreements as follows: "*no director shall bear any personal liability for any acts performed in good faith in his capacity as director or as assigned by the Board, except for willful misconduct, and/or acts in violation of Applicable laws or applicable ethical rules*". (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 8.1(h)).

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not required to any of the pleaded for damages and other legal and equitable relief, as Plaintiffs committed numerous breaches of the Shareholders Agreements, Loan Agreements, and other agreements among the parties including, but not limited to (i) the failure of Aarkish LLC to contribute the sum of at least $2,100,000.00 as a required capital contribution to Aace Pharmaceuticals; (ii) the failure of Aarkish LLC to contribute any of the required $5,000,000 capital contribution to Aarkish Pharmaceuticals; (iii) the failure of Plaintiffs to cause the issuance of Capital Contribution Reports and Investment Certificates to IMV for the $2,350,000 capital contributions made to date, as required under Article 5.5 of each SHA; (iv) disregarded the numerous requests by Defendants that the Plaintiffs remit the value enhancement fees and reimbursement of expenses under Section 9.7 of each Shareholder Agreement; (v) failure of Plaintiffs to cause the payment of interest for loans of no less than $2,350,000 made by Defendants to IMV; (vi) failure to provide any updates regarding the Aarkish Lifesciences EB-5 Project, construction updates, financial statements and performance, impact of the Covid-19 pandemic, modifications in the business plan thereby effectively making it impossible for IMV to provide continuous financial management services as contemplated under the Shareholder Agreements; and (vii) deliberate failure to attend or participate in mandatory quarterly and other board meetings called for by Defendants as required under the Shareholder Agreements; (viii) the failure to procure

– and/or the failure to advise Infinity of the procurement – of the granting of a State of New Jersey Business License to Aace under Article 6.2 of each Shareholder Agreement; (ix) the failure of Plaintiffs to "complete the launch of the pharmaceutical business" within thirty days of all licenses and approvals being received as required under Article 6.2; (x) the failure and refusal by Plaintiffs to allow Defendants to inspect, audit and conduct accounting of the books, tax returns, financial records, bank statements, correspondence, memorandums, resolutions, business plans, permits, applications, licenses, and other documents of the JCES to enable IMV, a minority shareholder to ascertain the use by Plaintiffs of the EB-5 Funds and fully assess the affairs of both JCEs.

## FIFTHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not required to any of the pleaded for damages and other legal and equitable relief, as Plaintiffs breached their implied covenants of fair dealing under the Shareholders Agreements, Loan Agreements, and other agreements among the parties.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because they have approved, ratified and confirmed the conduct of which they now complain.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fraudulently induced Defendants to enter into the Shareholder Agreements, Loan Agreements, and other agreements among the parties by promising that $750,000 booked by the Job Creating Enterprises, as fees payable to IMV for the professional service and expenses incurred by the Defendants could be credited towards the $5 Million capital contributions of IMV contemplated under the Shareholder Agreements.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver and estoppel.

## NINTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to plead with sufficient particularity his allegations in the Complaint that are based in fraud.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendants have completed all of their duties obligations under the Shareholder Agreements Loan Agreements, and other agreements between the parties, other than any other duties and obligations that were excused as a result of Plaintiffs' own misconduct, misrepresentations, fraud, oppression of IMV as a minority shareholder in the Job Creating Enterprises, and Plaintiffs' own numerous breaches of their own contractual obligations.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The KNAV US tax team was engaged only for tax return preparation for 2018 as to Aace Pharmaceuticals. Atul Mehta signed off the 2018 tax returns. For Plaintiffs to now allege that any of the Infinity Defendants compelled to sign the 2018 tax returns as president of Aace Pharmaceuticals is disingenuous and egregious in light of applicable U.S. Tax Code and IRS rules holding the president of the corporation signing the tax return as ultimately responsible for what is reported on that return.

Neither KNAV nor any Infinity entity had any formal engagement to maintain the ledger and books of account for Aace Pharmaceuticals or Aarkish Pharmaceuticals at anytime.  During 2018, the KNAV team (in Mumbai, India office) would at the request of Atul Mehta and Ameet Vyas periodically provide bookkeeping and financial inputs for Aace Pharmaceuticals, including suggestions on the revaluation on fixed assets.  The 2019 books of account were maintained by Atul Mehta's wife, Snehal Mehta. The financials of December 31, 2019 provided to the Infinity

Defendants on February 15, 2020 were based on books of accounts maintained by Snehal Mehta. Infinity or KNAV had no role to play in 2019 financials or anytime thereafter.

<u>**ADDITIONAL DEFENSES**</u>

Defendants reserve the right to raise any additional defenses against the allegations and causes of action in this Complaint, as may be found to be merited during the course of discovery in, or trial of, this action, including without limitation any equitable defenses.

**WHEREFORE**, Defendants INFINITY MULTIVENTURES INC., INFINITY AARKISH VENTURES, LLC, a New York Limited Liability Company, SANJAY DAYMA, SANDEEP MEHTA and VAIBHAV MANEK (together, "**Infinity Defendants**") demands judgment against Plaintiffs, as follows:

a. Dismissing the Complaint of Plaintiffs and all causes of action asserted thereunder, with prejudice;

b. Awarding the Infinity Defendants costs, attorneys' fees and disbursements arising out of the defense of the Complaint; and

c. Granting such other and further relief in favor of the Infinity Defendants, as this Court may deem just and proper.

Dated: January 7, 2021                Respectfully submitted,
      New York, New York

                                       LAW OFFICES OF JORGE SALVA, PLLC

                                        /s/ Jorge R. Salva
                          By: _____
                                Jorge R. Salva, Esq. (JS 0702)
                                *Attorney for Defendants Infinity*
                                *Multiventures Inc., Infinity Aarkish*
                                *Ventures, LLC, Sandeep Mehta,*
                                *Vaibhav Manek and Sanjay Dayma.*

## COUNTERCLAIM

Defendants INFINITY MULTIVENTURES INC., a Delaware Corporation, INFINITY AARKISH VENTURES, LLC, a New York Limited Liability Company, SANJAY DAYMA, SANDEEP MEHTA and VAIBHAV MANEK (together, "**Infinity Defendants**" or "**Defendants**"), by and through their undersigned counsel, Law Offices of Jorge Salva, PLLC, do hereby Counterclaim against plaintiffs AACE PHARMACEUTICALS INC, a New Jersey Corporation, AARKISH PHARMACEUTICALS NJ INC, a New Jersey Corporation, and AARKISH PHARMACEUTICALS LLC, a New Jersey Limited Liability Company (together "**Plaintiffs**"), and allege as follows:

1. Defendant Vaibhav Manek ("**Vaibhav**") met Ameet Vyas ("**Ameet**") through Ameet's previous employer, Havix Pharma LLC ("**Havix**"), another pharmaceutical firm based in Atlanta, Georgia, where Vaibhav's CPA firm, KNAV P.A., a global accounting firm, was engaged to write a business plan in 2015 for Havix.

2. In 2017, Ameet Vyas's employment contract with Havix was discontinued, at least in part, for the alleged misappropriation of intellectual property and other confidential information, after which Ameet relocated to New Jersey to take over work on a pharmaceutical project (the "**Aace Project**") and start-up founded by Ameet's friend, Atul Mehta ("**Atul**").

3. Thereafter, Atul Mehta sold the Ace Project to an India based promoter and industrialist Bhavesh Amin ("**Amin**") for a total sum of $3.65 Million plus some additional amounts for the purchase of equipment. Ameet Vyas had persuaded to invest in and take ownership control of Aace Pharmaceuticals Inc., a New Jersey corporation formed on February 24, 2017 ("**Aace Pharmaceuticals**").

4.       Ameet Vyas subsequently contacted Vaibhav at KNAV to help Mr. Amin with tax and regulatory compliance matters.

5.       Over the ensuing months in 2017, Mr. Amin became increasingly frustrated with the Aace Project's lack of progress arising with substantial delays, cost-over runs and lack of transparency, coupled with repeated demands to Mr. Amin for additional funding.

6.       Ultimately, in early 2018, Mr. Amin chose to extricate himself from any further exposure and decided to exit  pursuant to a simple buy-back written agreement.  Mr. Amin represented that Atul Mehta had taken economic advantage of him, resulting in financial and reputational damage suffered by Mr. Amin.  However, without a meaningful physical presence in the United States, Mr. Amin believed he had no viable legal recourse against Atul Mehta, and instead sold the Aace Project back to Atul.

7.       Thereafter, Atul Mehta contacted Vaibhav to help him re-write the business plan for Aace Pharmaceuticals and a separate business plan for Aarkish Pharmaceuticals LLC, a New Jersey limited liability company Atul formed in 2015 ("**Aarkish LLC"**), for a second project (the "**Aarkish Project**", and together with the Aace Project, the "**Aarkish Lifesciences EB-5 Project**").

8.       With Aace Pharmaceuticals. and Aarkish LLC in economic distress and requiring a new source of capital, Atul Mehta and Ameet Vyas invited Vaibhav to organize a consortium of high net-worth investors to invest in the Aarkish Lifesciences EB-5 Project, and with Vaibhav's knowledge and expertise, financially revive the operations and economic viability of both entities.

9.       Vaibhav thereafter in March 2018 contacted his colleagues, co-Plaintiffs Sandeep Mehta ("**Sandeep**") and Sanjay Dayma ("**Sanjay**", together the "**Infinity Principals**"), and the three agreed to collaborate and conceptualize their involvement in the Aarkish Lifesciences EB-5

Project, which contemplated their own investment under the U.S. EB-5 Immigrant Investor Program (the "**EB-5 Program**").

10.     The EB-5 Program is administered through the U.S. Citizenship and Immigration Services ("**USCIS**"), the agency within the United States Department of Homeland Security ("**DHS**") that administers the country's naturalization and immigration system.

11.     Over the ensuing months, the Infinity Principals continued their discussions with Atul Mehta and Ameet Vyas (sometimes referred to together herein as "**Plaintiff Insiders**") resulting in a written agreement among Aace Pharmaceuticals, Aarkish LLC,  and the Infinity Principals through their newly formed company (then, Infinity Multiventures LLP, an entity organized under the laws of India) to jointly develop, monetize, and enhance the value of Aace Pharmaceuticals and Aarkish Pharmaceuticals under a binding written term sheet dated October 14, 2018 (the "**Term Sheet**").

### A.   The October 14, 2018 Term Sheet.

12.     Under the Term Sheet, the Infinity Principals agreed to "*devise an effective corporate structure, including creation of a holding company, initiate restructuring and conduct all due diligence to bring operational effectiveness, raise capital (including equity, debt) required for the business growth with conventional and other financial instruments including EB 5,and appoint necessary agencies and advisors to execute the vison*".

13.     Accordingly, Plaintiffs, together with and Atul Mehta and Ameet Vyas, knew and encouraged that the Infinity Principals would raise up to the $5 Million in capital through investors utilizing the above stated financial instruments including the EB-5 Program.

14.     Plaintiffs, together with Atul Mehta and Ameet Vyas, further knew that none of the Infinity Principals were U.S. registered broker-dealers, or otherwise professional brokers.

15.     As consideration for the services of the Infinity Principals, Infinity Multiventures LLP would: (i) receive a 25% equity stake in each of Aace Pharmaceuticals and a newly formed New Jersey corporation, plaintiff Aarkish Pharmaceuticals NJ Inc. ("**Aarkish Pharmaceuticals**", and together with Aace Pharmaceuticals, the "**Job Creating Enterprises**" or sometimes as "**JCEs**"); (ii) have all necessary and actual expenses covered by each entity; (iii) would have board of directors representation and affirmative rights on key corporate actions; (iv) and receive quarterly management fees in the amount of 5% of the capital raised (which would be later designated as "**Value Enhancement Fees**" under the 2019 Shareholder Agreements for each JCE).

16.     As further evidence of Atul Mehta's and Ameet Vyas's promises to award a 25% equity stake and fairly compensate Infinity Principals for conceptualizing and developing the Aarkish Lifesciences EB-5 Project, the JCEs booked the amount $750,000 as payable to defendant Infinity Multiventures Inc. ("**IMV**"), allocated with $375,000 each payable by Aace Pharmaceuticals and Aarkish Pharmaceuticals.

17.     As an alternative to cash compensation, Atul Mehta and Ameet Vyas represented that the $750,000 could be credited towards the $5 Million capital contribution IMV intended to raise for the Job Creating Enterprises.

18.     In fact, each of Aace Pharmaceuticals and Aarkish Pharmaceuticals books reflected $375,000 as a liability payable to IMV, as of December 31, 2018, and thereafter reflected in the tax returns filed for 2018 with the IRS.  Even after the Shareholder Agreements for the JCEs were executed on September 11, 2019, these amounts continued to be reflected on their December 31, 2019 balance sheets as liabilities payable to IMV.

19.     The Infinity Principals agreed to this deferral of the booked $750,000 liability so as not to financially burden the Job Creating Enterprises while they remained financially distressed.

20.     The Parties ultimately agreed that substantially all of the $5 Million capital raise would be in the form of debt payable by the Job Created Enterprises to an entity, which was organized as Infinity Aarkish Ventures LLC, a New York limited liability company ("**Infinity Aarkish**").

21.     Infinity Aarkish would act as the "**New Commercial Enterprise**" or "**NCE**" under EB-5 regulations for the Aarkish Lifesciences EB-5 Project.

22.     The loans from Infinity Aarkish, the NCE, to each Job Creating Enterprise were tied to a successful exempt and overseas private offering to accredited investors, as defined in Rule 501 of Regulation D under the Securities Act, of membership interests in Infinity Aarkish, the NCE, pursuant to the U.S. EB-5 Immigrant Investor Program, including approval by USCIS of Alien Entrepreneur Petitions (I-526) under Section 203(b)(5) of the Immigration and Nationality Act, as amended.

23.     In reliance on Plaintiffs', Atul Mehta's, and Ameet Vyas's promises, the Infinity Principals worked through the 4th quarter of 2018, all of 2019, and 1st quarter of 2020 without receiving a single dollar for its services so as not to burden the JCEs, which were generating little to no revenue. Much of the work and services performed, and expenses incurred by the Infinity Principals, occurred well before the Shareholder Agreements were executed in September 2019.

**B.  Engagement of MSA Global to Prepare Legal Agreements and Assist with EB-5 Compliance**

24.     As the successful application of qualified investors by the USCIS was essential to a successful venture for the parties, the Infinity Principals sought the expertise and assistance of a reputable U.S. immigration law firm experienced in EB-5 matters.

25.     On October  29, 2018, Infinity Multiventures LLP entered into a Memorandum of Understanding (the "**MOU**") with Mona Shah and Associates, PLLC d/b/a MSA Global, an

immigration law firm headquartered at 232 Madison Avenue, Suite 1001, New York, NY 10016 ("**MSA Global**"), and Aria Strategies LLC, a New York limited liability company ("**Aria Strategies**"), with the same business address as MSA Global.

26.     The website for MSA Global represents Mehreen (Mona) Shah, Esq. as the founding partner attorney for MSA Global, and in her biography describes Ms. Shah as "*admitted to the New York Bar and the United States Federal Bar in 1997*".  (emphasis added). The MOU was signed by Ms. Shah as managing member of MSA Global.

27.     Ms. Shah and Rebecca Singh, Esq., another partner at MSA Global, signed the MOU as managing members of Aria Strategies. MSA Global's website  represents Ms. Singh as having *"worked with numerous project developers, analyzing and crafting entrepreneur, direct-pooled, and regional center projects from I-526 to I-829 petitions . . . well versed in USCIS compliance, offering advice on policy and integrity measures"*.

28.     Under the MOU, Infinity Multiventures LLP and Aria Strategies would "*work together identify and promote multiple businesses and projects in the Indo-USA corridor that meet or have the potential to meet, the statutory requirements of the EB-5 Immigrant Program.*" Infinity Multiventures LLP would also leverage "*its strategic, financial, legal, communication & marketing expertise and its network to bring investors on Board while developing project roadmaps and eventual exit strategies.*"

29.     As for MSA Global, under the MOU, the law firm would "*provide legal counsel to the projects, creating the necessary corporate entities, crafting offering documents for investors, and ensuring that all aspects of each project comply fully with regulations under the securities laws.*"

30.     The MOU was drafted by MSA Global, including the provisions stating that Infinity Multiventures LLP would bring immigrant investors to projects, while Ms. Shah and Ms. Singh knew full well that no Infinity Defendant was a U.S. registered broker-dealer under Section 15 of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**").

31.     NYC Transportation Regional Center, LLC, a New York limited liability company which is owned and controlled by Ms. Shah ("**NYCTRC**"), would sponsor the Aarkish Lifesciences EB-5 Project pursuant to a separate July 19, 2019 Regional Center Sponsorship Agreement (the "**Sponsorship Agreement**") between the NYCTRC and Infinity Aarkish, the New Commercial Enterprise.

32.     EB-5 regional centers, such as NYCRTC, are economic units, public or private, involved with promoting economic growth in certain U.S. geographic areas, and designated by the UCIS for participation in the EB-5 Immigrant Investor Program.   The USCIS approved NYCTRC's designation as a participant in the Immigrant Investor Program on February 2, 2018.

33.     In furtherance of the MOU, Infinity Principals formed Infinity Multiventures Inc, a Delaware corporation (previously defined as "**IMV**"), a Delaware corporation with its principal office located at 232 Madison Avenue, Suite 1001, New York, NY 10016.  MSA Global created Infinity Aarkish, a New York limited liability company and the new commercial enterprise under the EB-5 Scheme, also with its principal office located at 232 Madison Avenue, Suite 1001, New York, NY 10016, the same business address as MSA Global, Aria Strategies, and NYCRTC.

34.     IMV is equally owned and controlled by defendants Vaibhav Manek, Sanjay Dayma, and Sandeep Mehta, each of whom have 25% stock ownership therein, and Aria Strategies, the entity owned and controlled by Mona Sha and Rebecca Singh, owns 25% of the remaining issued stock. Prior to October 2020, the Board of Directors for IMV consisted of the

Infinity Principals, Mona Shah, and Rebecca Singh for a total of five (5) directors.  In late October 2020, Ms. Singh and Ms. Shah resigned from the Board of Directors of IMV.

    **C.  The 2019 Shareholder Agreements.**

35.    The Parties expanded on the terms of the Term Sheet with formal shareholder agreements for each Job Creating Enterprise.

36.    Mona Shah, Rebecca Singh, and MSA Global drafted and prepared the shareholder agreements for both Aace Pharmaceuticals and Aarkish Pharmaceuticals.

37.    Atul Mehta, Ameet Vyas, Mona Shah, Rebecca Singh, and MSA Global knew that the Infinity Defendants were not U.S. registered broker dealers, as required under Section 15 of the Exchange Act at the time MSA Global drafted the shareholder agreements for the Job Creating Enterprises.

38.    Aarkish LLC, IMV, Kameshwar Investment, LLC, a California corporation ("**Kameshwar**"), and S&O Pharma Corp. ("**S&O**"), a Pennsylvania corporation, executed the Aace Pharma Shareholder Agreement executed on or about September 11, 2019, and with an effective date of October 30, 2018 (the "**Aace Pharma SHA**", a copy of which is attached as Exhibit A to Plaintiffs' Complaint).

39.    Also, on September 11, 2019, Aarkish LLC and IMV, the only parties, executed the Aarkish Pharma Shareholder Agreement, again with an effective date of October 30, 2018 (the "**Aarkish Pharma SHA**", and together with the Aace Pharma SH, the "**SHAs**" or the "**Shareholder Agreements**").  A copy of the Aarkish Pharma SHA is annexed as Exhibit B to Plaintiffs' Complaint.

40.    The scope of the JCEs' business set forth in each Shareholders Agreement is to "design, manufacture, and market controlled substance and non-substance controlled products,

develop and file Abbreviated Drug Applications ("**ANDAs**") and over-the-counter ("**OTC**") generical, Contract Manufacturing Operations ("**CMO**") and branded drugs." (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 4.2) (emphasis added).  The stated business objective of each JCE is to "utilize the combined technological, management, operational marketing, strengths of the Parties to within the approved scope of business of the Company for the development of the pharmaceutical manufacturing facility ("**Facility**") within the town of Fairfield, New Jersey".  (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 4.1).

41.     The total amount of authorized capital for Aace Pharmaceuticals is $10,000,000. Under the Aace Pharmaceuticals SHA: (i) Aarkish LLC agreed to contribute $5,000,000 in cash capital for a 58% share in Aace Pharmaceuticals; (ii) SOS agreed to contribute $1,000,000 in cash capital for a 10% share in Aace Pharmaceuticals; (iii) Kameshwar agreed to contribute $700,000 in cash capital for a 7% share in Aace Pharmaceuticals; and (iv) IMV agreed to contribute $1,500,000 in capital for a 25% share in Aace Pharmaceuticals.

42.     Under the Aarkish Pharmaceuticals SHA: (i) Aarkish LLC agreed to contribute $5,000,000 in cash capital for a 75% share in Aace Pharmaceuticals; and (ii) IMV agreed to contribute $3,500,000 in capital for a 25% share in Aarkish Pharmaceuticals. The total amount of authorized capital for Aarkish Pharmaceuticals is $10,000,000, but only $8,500,000 in capital contributions were specifically allocated for under the Aarkish Pharmaceuticals SHA.

43.     Both SHAs authorized IMV to deploy its respective $1,500,000 and $3,500,000 capital contributions in the form of "*cash from investors via equity, debt, credit, commercial paper or any other effective financial instruments suitable for the execution of the developed roadmap.*" (emphasis added).

44.     Schedule C of the Aace Pharmaceuticals SHA further provides: (i) Aarkish LLC represented that it has "*made its contributions to the authorized capital* [totaling $5,000,000) *of the Company before the effective date hereof*" (i.e., before October 30, 2018); (ii) S&O represented it made its $1,000,000 capital contribution to Aace Pharmaceuticals on October 5, 2018; and (iii) Kameshwar represented it made its $700,000 capital contributions to Aace Pharmaceuticals on October 11, 2018.

45.     Aarkish LLC failed to contribute no less than amount of at least $2,100,000, toward the $5,000,000 stated capital contribution to Aace Pharmaceuticals constituting a breach under Section 5.3 (a) and Schedule C of the Aace Pharmaceuticals SHA.  Further, Aarkish LLC's representation in Schedule C that it had made its required $5,000,000 capital contribution was false and in breach of the Aarkish Pharmaceuticals SHA.

46.     Each SHA further provides for the issuance of Investment Certificates representing each investor's capital contribution, and specifically interim investment certificates for partial contributions on the contracted for amounts:

> ***When a Party has made all or any part of its contribution to the authorized capital of the Company, a registered accountant appointed by the Board shall verify such contribution and issue a capital contribution verification report in the form required under the Applicable Laws.*** In accordance with such report, the Company shall issue an Investment Certificate to the relevant Party. ***An interim certificate shall be issued in respect of each partial contribution made by a Party. Upon completion of all capital contributions by a Party any interim certificate(s) shall be returned to the company for cancellation and a final Investment Certificate shall be issued.***  Any interim or final Investment Certificate shall be signed by either Chairman and the Vice Chairman of the Board and stamped with the Company seal, and shall certify the amount of authorized capital contributed by such Party and on the which such capital contribution was made.

(Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 5.5) (emphasis added).

47.     Plaintiffs further failed to issue Capital Contribution Reports and Investment Certificates to IMV for the $2,350,000 capital contributions made to date, as required under Section 5.5 of each SHA.

48.     In fact, the resolutions of the November 19, 2020 Board of Directors meeting for the JCEs resolved that "*the vesting letter for equity be vested and allotted and issuance of investment certificate by IMV into the NCE be approved; and that the Corporate Attorney be tasked with its preparation and issuance to investors*". But neither Plaintiffs nor Plaintiff Insiders took any action or steps to issue investment certificates to Infinity in furtherance of this resolution.

49.     Each SHA further mandates that "**Value Enhancement Fees**" be paid to IMV for services the Infinity Defendants undertook, including but not limited to: developing and implementing proper corporate governance protocols; strategic management; sourcing and raising capital through strategic partners and alliances; utilizing banking relationships, and providing other financial and management expertise, and other value enhancement services (together the "**Services**").  The Value Enhancement Fee clause of each SHA stated as follows:

> ***[IMV] is entitled to the value enhancement fee (the "Value Enhancement Fee"), equal to five percent (5%) its total amount of financing (including but not limited to equity and debt) raised, year on year, for its services*** including but not limited to its expertise towards execution of complex and scale projects in terms of providing strategic management services, leveraging financial acumen and expertise, utilizing banking relationships, introducing strategic partners on Board for the growth of the business, setting up alliances, managing corporate governance an such other value enhancing services to be provided from time to time during the existence of its contribution to the authorized capital of the Company.  To the extent the Company mandates any future financing, contribution or additional source of capital with respect to the development and operation of the Company, both parties shall determine in their sole discretion such Value Enhancement Fee.  ***All operating expense incurred by [IMV] shall be paid prior to the payment of the Value Enhancement Fee. [IMV] shall calculate the Value Enhancement Fee that is due and payable immediately within seven (7) days from the end of each quarter or as the cash flow permits not exceeding thirty (30) days from the end of the relevant quarter.***

(Aace Pharmaceuticals and Aarkish Pharmaceuticals ¶ 9.2) (emphasis added).

50.     Plaintiffs failed and refused to: (i) make a single payment of the Value Enhancement Fee payable to IMV in the amount of no less than $135,000; and (ii) reimburse any of the expenses incurred in connection with the Infinity Defendants' performance of the Services contemplated under the SHAs.

51.     By December 31, 2020 professional fees owed and still unpaid by Plaintiffs had escalated to $930,750 (calculated based on detailed time records maintained by each Infinity Principal since they began to collaborate with the Plaintiffs and Plaintiff Insiders in mid-2018).

52.     Plaintiff Insiders disregarded the numerous requests by the Infinity Defendants that the Plaintiffs remit these mandatory fees and reimbursements, constituting a breach of each of the Shareholders Agreements.

53.     The SHAs also contemplated that IMV would raise the $5,000,000 capital contribution from third-party investors purchasing Membership Interests in Infinity Aarkish, the New Commercial Enterprise.  Each SHA specifically provides as among IMV's responsibilities:

> [B]orrow funds on behalf of the Company from banks, lending institutions, investors, and other third parties on such terms and conditions as [IMV] may deem appropriate and, in connection therewith [IMV] may grant security interests in the Company's assets to secure repayment of such borrowed funds, subject to all conditions and limitations set forth in this Agreement and the Board's approval).

54.     Plaintiff Insiders and Plaintiffs had actual knowledge that the Infinity Defendants were not U.S. registered broker dealers, as required under Section 15 of the Exchange Act, but nonetheless Plaintiffs not only accepted $2,350,000 in proceeds from the EB-5 investors into the bank accounts for the JCEs but they continued to demand EB-5 funds from the New Commercial Enterprise.

**D. Private Offering of Membership Interests in Infinity Aarkish**

55.      Infinity Aarkish, the NCE offered Membership Interests in the Company through a private offering (the "**Offering**") to non-U.S. Persons (as defined in Rule 901 under Regulation S under the Securities Act) who are "**accredited investors**" as defined in Rule 501 of Regulation D under the Securities Act, and in reliance on exemptions from the registration requirements under the Securities Act of 1933, as amended (the "**Securities Act**").  In the Offering, Infinity Aarkish further reserved the right to offer the Membership Interests within the U.S., and to U.S. Persons, under Rule 506(c) of Regulation D, which permits issuers to broadly solicit and generally advertise an offering, provided that all purchasers are accredited investors, and that Infinity Aarkish took reasonable steps to verify purchasers' accredited investor status.

56.      Infinity Aarkish, the NCE, relying on the legal advice and expertise of Mona Shah, Rebecca Singh and MSA Global, structured the Membership Interests to be qualifying investments under the EB-5 Program.

57.      Mona Shah, Rebecca Singh, and MSA Global, together with an outside corporate law and SEC law firm they engaged for review, drafted the principal offering documents to the prospective investors of the membership interests in Infinity Aarkish, including but not limited to the Private Offering Memorandum ("**POM**"), Subscription Agreement, Limited Liability Operating Agreement, Affiliation Agreement, Escrow Agreement and form of Loan Agreements between Infinity Aarkish and each of the Job Creating Enterprises.

58.      An immigrant investor must file an initial petition (Form I-526) and supporting documentation, the POM and business plan, to receive EB-5 immigrant classification and qualify for a two (2) year visa.  According to the website for USCIS, adjudicators review 1-526 petitions to determine if the petitioner has demonstrated: (i) the required amount of capital has been invested

or is actively in the process of being invested in the new commercial enterprise; (ii) the investment capital was obtained by the investor through lawful means; (iii) the new commercial enterprise will create at least 10 full-time positions for qualifying employees; and (iv) the immigrant investor is or will be engaged in the management of the new commercial enterprise. https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-4#footnote-2 . If the immigrant investor seeks to qualify based on a reduced (50 percent of the standard minimum) investment amount, it is necessary to show the new commercial enterprise or job-creating entity, as applicable, as principally doing business in a in targeted employment area, which includes rural areas and areas with high unemployment ("**TEA**"). https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-4#footnote-2 .

59.    The New Jersey Department of Labor and Workforce Development has certified that the Aarkish Lifesciences EB-5 Project is located in a geographic area having an unemployment rate that is 150% of the national average or more, establishing the area as a TEA.

60.    The initial resident status, if granted, is "conditional" for a period of two years. Prior the termination of this two-year preliminary period, the Conditional Permanent Resident must file an additional application with the USCIS to request removal of the conditions (referred to as the filing of the Form 829). https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-investors  .

61.    To facilitate the transactions in accordance with the statutes and rules of the EB-5 Program, two bank accounts corresponding to each Job Creating Enterprise were opened at Signature Bank, to be operated jointly (the "**Joint Account**"), and to ensure the EB5 documentation and transactions are done within EB-5 rules and guidelines so as not to adversely

per the guidelines and maintained thus for future use during the adjudication process of the I-526 petitions of the EB-5 Investors.

62.     Notably, there are four (4) authorized signatories to each of the Joint Accounts are as follows: Vaibhav, Sandeep, Sanjay, and Atul Mehta.  Two of these four (4) signatories are required to sign off prior to the transfers of funds.  As a matter of internal policy among the Infinity Principals, and in keeping with the spirit of the parties' agreements, Vaibhav, Sandeep, Sanjay agreed not to transfer any funds out of either Joint Account without the consent of Atul Mehta.

63.     The minimum capital contribution for each investor under the Offering was $500,000 ("**Minimum Capital Contribution**"), plus an additional administrative fee (the "**Administrative Fees**", and together with the Administrative Fees, the "**Subscription Amount**") for the reimbursement to IMV for its expenses associated with preparing and conducting the Offering.

64.     Pursuant to the POM, the investors would wire the proceeds of the Subscription Amount into an escrow account in the name of IMV FOB Infinity Aarkish with Signature Bank serving as the independent escrow agent ("**Escrow Agent**") pursuant to the terms and conditions of the August 5, 2019  Escrow Agreement by and among Signature Bank, Infinity Aarkish, and Infinity Multiventures ("**Escrow Agreement**").

65.     After the investor has submitted his or her I-526 petition to USCIS, the Escrow Agent will release 90% (i.e., $450,000) of the Capital Contribution to Infinity Aarkish, and place the remaining 10% (the "**Holdback Amount**") in a "**Holdback Account**" administered by the Escrow Agent as a contingency fund for the repayment of Subscribers whose I-526 petitions may be denied by USCIS.  Signature Bank serves as the Escrow Agent.

66.     If the USCIS denies a subscriber's I-526 petition (without appeal or after denial of any appeal), the New Commercial Enterprise will return (or cause the escrow agent to return), the Capital Contribution to that subscriber, unless the subscriber caused the denial through misrepresentation, fraud, failure to comply with the USCIS's requests, or abandonment, or failure to provide sufficient evidence to prove a lawful source of funds.  The timing of the refunds and the terms of NCE's use of Holdback Account to repay denied subscribers is further disclosed in the POM.

67.     The deposits from the EB-5 Investors into escrow are summarized below and documented with the September 2019 to December 2019 bank records of the Escrow Account.

| # | Date | Investor | | Deposits into Escrow | | |
|---|---|---|---|---|---|---|
| | | Last | First | Deposit | Capital | Admin Fee |
| 1 | 9/16/2019 | MANEK | Hemal | $ 249,965 | | |
| | 09/16/2019 | MANEK | Hemal | $ 249,965 | | |
| | 09/16/2019 | MANEK | Hemal | $ 20,105 | | |
| | | | | $ 520,035 | $ 500,000 | $ 20,035 |
| 2 | 11/6/2019 | BAMRA | Ravpreet | $ 500,000 | | |
| | | | | $ 500,000 | $ 500,000 | $ - |
| 3 | 11/12/2019 | MEHTA | Sandeep | $ 100,000 | | |
| | | | | $ 100,000 | $ 100,000 | $ - |
| 4 | 11/12/2019 | MANEK | Vaibhav | $ 100,000 | | |
| | | | | $ 100,000 | $ 100,000 | $ - |
| 5 | 11/12/2019 | PATEL | Raj | $ 250,000 | | |
| | 11/12/2019 | PATEL | Raj | $ 275,000 | | |
| | | | | $ 525,000 | $ 500,000 | $ 25,000 |
| 6 | 11/14/2019 | NARKE | Amit | $ 140,000 | | |
| | 11/14/2019 | NARKE | Amit | $ 140,000 | | |
| | 11/14/2019 | NARKE | Amit | $ 240,000 | | |
| | | | | $ 520,000 | $ 500,000 | $ 20,000 |
| 7 | 11/14/2019 | PATEL | Parthive | $ 145,000 | | |
| | 11/14/2019 | PATEL | Parthive | $ 155,000 | | |
| | 11/14/2019 | PATEL | Parthive | $ 225,000 | | |
| | | | | $ 525,000 | $ 500,000 | $ 25,000 |
| | | | | TOTAL | $ 2,700,000 | $ 90,035 |

68.     A total of seven (7) investors subscribed to the Offering (the "**EB-5 Investors**").
Two of those investors are defendants Vaibhav and Sandeep each of whom committed to make a
capital contribution of $500,000.

69.     USCIS permits an investor to be in the process of investing or making a partial
capital commitment, as Vaibhav and Sandeep did each wiring $100,000 into the Escrow Account,
to submit an I-526 and establish a priority date.

70.     One of the other investors, Hemal Manek is Vaibhav's brother, and another
investor, Amit Narke is a personal friend of Mr. Manek.

71.     The other three (3) investors, Raj Patel, Parthive Patel, and Ravpreet Bhamra, were solicited by MSA Global and Mona Shah, as these individuals were clients of that law firm. Ms. Shah had for some time sought an investment vehicle for Messrs. Patel, Patel, and Bhamra to qualify for U.S. resident status under the EB-5 Program, until Ms. Shah placed these individuals as investors into Infinity Aarkish.

72.     MSA Global, Mona Shah or Rebecca Singh did not represent to the Infinity Defendants that they were U.S. registered broker dealers.  A search of public records do not indicate that  Ms. Shah, Ms. Singh, MSA Global, Aria Strategies, or NYCTRC is a U.S. registered broker, required under Section 15 of the Exchange Act.

73.     Plaintiffs' allegations that the Infinity Defendants unlawfully solicited investors as unregistered broker-dealers is also without legal basis.  To the extent that Section 15 of the Exchange Act applies, they are covered under the Safe Harbor exemptions under Rule 3a4-1, codified as 17 CFR § 240.3a4-1, for an issuer and an issuers officers and other persons, such as the Infinity Principals, associated with the issuer.

74.     Plaintiffs also knew that the Infinity Defendants were not U.S. registered brokers, but permitted, encouraged, and ultimately encouraged the continued capitalization of the Job Creating Entities through the EB-5 Funds raised by Infinity Aarkish.

75.     Out of the $3,500,000 in capital contribution committed to the project, $2,700,000 (together "**EB-5 Funds**") was wired by the seven (7) investors to the Signature Bank Escrow Account, of which $350,000 was held back in the Escrow Account per the Holdback provisions of the POM.

76.     Accordingly, the I-526 applications, with the assistance of MSA Global, were completed for all seven (7) investors in Infinity Aarkish and submitted to USCIS between October 8, 2019 and November 20, 2019.

**E.  The 2019 Loan Agreements**

77.     Prior to the execution of the Shareholder Agreements, but in furtherance of the Atul Mehta's and Ameet Vyas's agreement that the $5 Million in capitalization from the Infinity Defendants could be issued as debt, the parties entered into two loan agreements during mid-2018.

78.     The first loan agreement was entered between Infinity Aarkish, as lender and Aace Pharmaceuticals, as borrower for a minimum and maximum loan amounts of $500,000 and $1,500,000 respectively (the "**Aace Loan Agreement**").

79.     The second loan agreement was entered between Infinity Aarkish, as lender and Aace Pharmaceuticals, as borrower for a minimum and maximum loan amounts of $500,000 and $3,500,000 respectively (the "**Aarkish Loan Agreement**", and together with the Ace Loan Agreement, the "**Loan Agreements**", copies of which are attached as Exhibits C and D to Plaintiffs' Complaint).  Each Loan Agreement incorporated simultaneously executed promissory notes (together, the "**Loan Documents**").

80.     Atul Mehta, as President of both Aace Pharmaceuticals and Aarkish Pharmaceuticals duly executed their respective Loan Agreements and Promissory Notes on July 26, 2019.  The Infinity Principals, as director for IMV, duly executed both Loan Agreements and Promissory Notes on August 5, 2019.

81.     The disbursements of the proceeds of principal were structured as advances by Infinity Aarkish to each Job Creating Enterprise (hereinafter "**Advances**"), the first Advance of which was to be made no later than December 31, 2019 (the "**First Advance**").

82.     The term under each Loan Documents was for five (5) years, subject to a further extension of the maturity of up to two (2) additional one (1) year terms, with interest payable to Infinity Aarkish at the rate of even percent (7%) per annum ("**Interest Rate**"). The Loan Documents further provide that the payment terms: each JCE would make annual payments of interest only on the outstanding principal balance of all Balances at the Interest Rate, beginning thirty (30) days after the First Advance and yearly thereafter until the expiration of five (5) years from the First Advance.  Upon maturity, all unpaid indebtedness of principal and interest would be due and payable by the JCEs to Infinity Aarkish.

83.     As collateral, all Advances under the Loan Agreements were secured by the pharmaceutical manufacturing facility, which Plaintiffs intended to develop and located at 15 Gardner Road, Fairfield, New Jersey 07004, pursuant to separate Security Agreements.

84.     In each Loan Agreement, the JCEs acknowledged that the loans were dependent upon a successful offering of membership units of Infinity Aarkish to investors pursuant to the EB-5 Program.

85.     In entering into the Loan Agreements, each of Aace Pharmaceuticals and Aarkish Pharmaceuticals make numerous representations and warranties to Infinity Aarkish, all of which are deemed continuing until all loans were fully paid, included: "*The Borrower shall use the proceeds of each Advance hereunder for purposes set forth in its business plan, including general commercial purposes related to job creation, repayment of existing debt, inventory financing and liquidity….*"  (Loan Agreements ¶ 4.1(g)) (emphasis added).

86.     The Loan Agreements further included certain condition precedents including: (i) that there has been "*no material adverse change (as determined by Lender) in the assets, liabilities, financial condition, or business of the Borrower since the date any of the financial statements*

*delivered to the Lender before or after the date of this Agreement*"; and (ii) "any request for a borrowing shall be deemed a certification by the Borrower as to the truth and accuracy in all material respects of the representations and warranties contained in Section 4 *supra* and in each other Loan Document as of the date of such request". (Loan Agreements ¶¶ 5.2(b), 5.2(c) (emphasis added).

87. Further, "all documents and assurances of any type related to the fulfillment of any condition or compliance with any provision hereof or any other Loan Document and all other matters relate to the Loan are subject *to the prior approval and satisfaction of the Lender, its counsel and other consultants*". (Loan Agreements ¶ 10.28) (emphasis added).

88. Accordingly, the disbursements of EB-5 funds by Infinity Aarkish to both Job Creating Entities, as contemplated under the Shareholder Agreements, would also be subject to the Loan Agreements, including the required payments of Interest.

**F. Disbursement of Investment Proceeds to the JCEs and Plaintiffs' Unsupported Demands for Additional Funding in Contravention of the POM and Business Plan.**

89. Out of the $2,350,000 in EB-5 funds available for the Job Creating Enterprises (net of the $350,000 to held back under the POM's Holdback provisions), the proceeds were allocated as follows. Infinity Aarkish wired $1,410,000 to the Signature Bank Joint Account for Aace Pharmaceuticals in two (2) installments, the first in the amount of $1,350,000 on December 20, 2019, and the second wire in the amount of $60,000 on January 16, 2020. Infinity Aarkish also wired $940,000 to the Signature Bank Joint Account for Aarkish Pharmaceuticals in two (2) installments, the first in the amount of $900,000 on December 20, 2019, and the second wire in the amount of $40,000 on January 16, 2020.

90. The Infinity Defendants allocated the amounts of each of the deposits into the Joint Accounts pursuant to the instructions of Mona Shah and MSA Global.

91.     **The amount of $1,410,000 continues to be the balance of the Joint Account for Aace Pharmaceuticals at Signature Bank untouched by the Infinity Defendants.**

92.     Pursuant to the requests of Plaintiffs' senior officers, Atul Mehta and Atul Vyas, the Infinity Defendants effected the disbursement of $850,000 to a construction vendor Lupaks Construction Company, L.L.C. ("**Lupaks Construction**") in two (2) installments, the first for $500,000 on December 31, 2019, and the second for $350,000 on January 21, 2020 (together the "**Lupaks Proceeds**").

93.     **The amount of $90,000 continues to be the balance of the Joint Account for Aarkish Pharmaceuticals at Signature Bank untouched by the Infinity Defendants.**

94.     The Lupaks proceeds were disbursed out of the Aarkish Pharmaceuticals Joint Account only in accordance with the "**Use of Proceeds**" disclosed in the POM, which contemplated that any and all construction related disbursements would be deployed only out of said account.

95.     Per the POM, no proceeds for construction costs were to come from the Aace Pharmaceuticals Account.  Instead, disbursements from that account were limited to filing fees abbreviated ANDAs to be filed with the FDA, together with research and development costs. Simply put, the POM did not authorize any proceeds originating from EB-5 Funds to be disbursed in connection with any costs or other expenses not explicitly set aside in the POM.

96.     The "**Use of Proceeds**" disclosure in the POM is entirely consistent with the EB-5 rules and the USCIS Policy Manual is the source of official guidance on the EB-5 Program https://www.uscis.gov/policy-manual/volume-6-part-g-chapter-2 , which states where the EB-5 funds must be spent, including that: "*The full amount of the investment must be made available to the business(es) most closely responsible for creating the employment upon which the petition is*

*based*".  Since the funds are in fact deposited in the JCE Joint Accounts as allocated by the Infinity Defendants, and as stated in the POM, this requirement is met.

97.     Subsequent to the disbursement and  payment of $850,000 to Lupaks Construction, Atul Mehta placed relentless pressure on the Infinity Defendants to release of the balance of the EB-5 Funds (totaling $1,500,000.00), without Plaintiff Insiders or Plaintiffs sharing the requisite invoices, purchase or work orders, vendor names, or any other details or documents verifying that the EB-5 funds would in fact be used to carry out the business activities of the Aarkish Lifesciences EB-5 Project and create the requisite jobs.

98.     Significantly, Atul Mehta demanded that these EB-5 Funds be wired to other bank accounts at Unity Bank for the Job Creating Enterprises opaque to oversight by the Infinity Defendants and EB-5 Investors.

99.     Beginning in February 2020, Atul Mehta communicated his intended use of the proceeds in the Aace Pharmaceuticals Joint Account, with $550,000 going to construction expenses not authorized under the POM. Even more troubling another $750,000 earmarked mostly for: (i) Atul's 2018 buyback of Aace Pharmaceuticals from Bhavesh Amin; (ii) payments of interest and principal on nearly $1.2 Million of Atul's personal loans improperly booked as liabilities of Aace Pharmaceuticals on the entity's balance sheet; (iii) over $85,000 in legal fees payable to MSA Global, and other expenses which were either unauthorized by the POM or for which Plaintiffs and Plaintiff Insiders failed to provide any due diligence, invoices, or back-up documentation.  Atul Mehta used most, if not all, of the proceeds of these personal loans to fund his capital contribution, a bright red flag that would reduce Atul's shareholder interest (through Aarkish LLC) in Aace Pharmaceuticals and threaten his control of the JCEs.

100.    On numerous occasions, the Infinity Principals, and even Mona Shah, reminded Atul of the parties' obligation to verify that EB-5 funds are used only for job creating purposes in accordance with the POM, and that the misuse of EB-5 funds by the Plaintiff Insiders would result in the I-526 applications being denied by the USCIS, and even possible immigration and securities law violations.  Yet, Atul Mehta continued to disregard these warnings and admonitions.

**G.  Atul Mehta Engaged in a Pattern of Bad Faith Conduct Sabotaging the Infinity Defendants' Rights under the Shareholder Contracts and Jeopardizing the Investments and I-526 Petitions of the EB-5 Investors.**

101.    In light of the insistence by the Infinity Defendants' in following immigration law and proper due diligence before releasing any EB-5 proceeds, Atul Mehta engaged in a pattern of bad faith and gross misconduct that, upon information and belief, he designed to sabotage the Shareholder Agreements, and all other agreements with the Infinity Defendants, and in turn jeopardize the pending I-526 applications and investment proceeds of the EB-5 Investors.

102.    On February 28, 2020, without warning or prior discussion, Atul Mehta emailed the Infinity Principals abruptly demanding that they cease all investor related activities until further instructions from Atul or his legal counsel.

103.    Atul Mehta's timing of his email could not have been more harmful to the Infinity Defendants.  Atul Mehta's February 28 email was on the final day of a successful investor summit in Mumbai, India taking place with Atul's full knowledge and prior approval. At the Mumbai summit, the Infinity Principals engaged in 1-on-1 discussions with 30 Ultra–High Net-worth Individuals ("**U-HNIs**"), all accredited investors, at one of the finest 5-star hotel properties in Mumbai.  EB-5 attorney Rebecca Singh from MSA Global flew to Mumbai to help promote and address any inquiries from the U-HNIs regarding the Offering, the EB-5 Program, and the

application process.  These efforts and out-of-pocket expenses incurred by the Infinity Defendants were wasted by Atul Mehta's shocking email, which he knowingly sent on the summit's final day.

104.    More than the out-of-pocket expenses, Atul Mehta's email foreclosing on further capital raising activities, deliberately sabotaged Infinity Aarkish's efforts to raise the final $750,000 necessary to satisfy the $5,000,000 capital contribution commitment made under the Shareholder Agreements.  Atul's February 28, 2020 email constituted a deliberate breach of the Shareholder Agreements, Loan Agreements, and all of the other parties' binding agreements and promises.

105.    Atul Mehta's other misconduct would only further escalate over the ensuing months.

106.    Per the parties' prior agreements with Atul Mehta, IMV was to receive proportionate equity shares in the Job Creating Enterprises and credited towards the $5 Million capital contribution contemplated under the Shareholders Agreement in lieu of the Plaintiffs paying in cash for professional fees and out-of-pocket expenses earned and incurred respectively by the Infinity Principals.

107.    As asserted in Paragraphs 16-17 of this Counterclaim, *supra*, Atul Mehta acknowledged his obligation, even after the Shareholders Agreements were executed, by continuing to treat $750,000 as payable to IMV, with $375,000 each payable by Aace Pharmaceuticals and Aarkish Pharmaceuticals.

108.    In light of the escalating costs incurred by the Infinity Defendants, Atul offered to have Aarkish LLC, the holding company for both JCEs, wire $100,000 each to Aace Pharmaceuticals and Aarkish Pharmaceuticals for the benefit of Infinity Aarkish, the NCE, as additional credit towards the $5 Million capital contribution requirement Shareholder Agreements.

109.     Subsequently, Atul Mehta reneged on this arrangement, and instead preferred to have Aarkish LLC wire $100,000 directly to Vaibhav and Sandeep's bank accounts in India (the Infinity Principals possess letters from Atul to this effect).

110.     At no point prior to Atul Mehta initiating the wires to Vaibhav or Sandeep did Atul or Ameet Vyas disclose that the source of Aarkish LLC's proceeds originated from EB-5 Funds. The Infinity Defendants had no access or transparency to the Aarkish LLC bank accounts to ascertain the source of funds.

111.     The Infinity Principals have had no intention to be paid EB-5 Funds for the payment of professional fees and reimbursement of expenses of the Infinity Principals.

112.     Once Mona Shah advised the Infinity Principals that the wires might be improper under EB-5 rules and USCIS policy statements, Vaibhav and Sandeep promptly remedied the matter reimbursing the $200,000 from their personal accounts back to Aarkish LLC on or about March 30, 2020.

113.     Blindsided by this turn of events, Infinity Principals realized this was an attempt to entrap Infinity Principals with an intent to eject them from the project. Future communications verify this plan.

114.     When Atul Mehta, acting on behalf of the JCEs, attempted to unilaterally terminate the Shareholders Agreements on these grounds, Mona Shah reminded Atul in an April 20, 2020 email that it was he who illegally transferred $100,000 in proceeds each to Vaibhav and Sandeep in the first place, and further stated that Atul needed to confirm the intended use of proceeds before additional EB-5 Funds would be disbursed.

**H.  Plaintiffs' Freezing Infinity Defendants Out of the Job Creating Enterprises.**

115.     It soon became apparent that Atul's abrupt February 28, 2020 email demanding that the Infinity Defendants cease all investor related activities, was the first step in a plan by Plaintiffs and Plaintiff Insiders to oppress, freeze, and ultimately force out IMV as a minority shareholder, and the Infinity Principals as directors from participation in the affairs of both JCEs.

116.     After February 15, 2020, Plaintiffs and Plaintiff Insiders refused to provide any tax returns, financial statements, balance sheets, documents regarding EB-5 Funds utilization, or any other documents requested by the Infinity Defendants.

117.     Plaintiffs, together with Atul Mehta and Ameet Vyas, are wholly depriving the Infinity Defendants information as to the affairs of the JCEs in order to conceal, upon information and belief, their self-dealing and intended misuse of the EB-5 Funds to pay off Atul's personal loans and other expenditures not related to job creating purposes, in conflict with the "*Use of Proceeds*" disclosures in the POM, in violation of applicable immigration and securities law, and most significantly jeopardizing the cash investments, together with the I-526 application, made by the seven (7) EB-5 investors.

118.     Upon further information and belief, the Plaintiffs and Plaintiff Insiders threatened by stringent due diligence inquires and frustrated with the Infinity Defendants not rubber stamping their misuse and misappropriation of EB-5 Funds, have oppressed and frozen out minority shareholder IMV, and by extension all of the EB-5 investors.

119.     In further breach of the Shareholder Agreements, Atul Mehta, through his control of Aarkish LLC, refused to send a single director or participant to any Board meeting attempted to be held by the Infinity Defendants after November 19, 2019.

120.    Each Shareholder Agreement provided that the Board of each JCE would consist of five of five (5) directors, there (3) of whom would be appointed by Aarkish LLC and two (2) appointed by Infinity Aarkish.  Each director would serve and shall be removed only at the pleasure of the party that appointed him or her.

121.    The adoption of numerous Board resolutions required the consent of at least one (1) director from Aarkish LLC and one director from Infinity Aarkish, with such matters including in part: (i) "*any change in the structure, size, or composition of the Board;* (ii) *"any investment, or the liquidation of any investment made by the Company, in any other person, entity or business*"; and (iii)  "*review and approval of Company policies and procedures regarding management of financial accounts, execution of legal documents, applicable ethical rules and ethical practices and other important matters including but not limited to any act that might be to the detriment of the Company. . . provided however that it first obtain the prior written consent of [IMV] or its appointed director*".  (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 8.2(b) (emphasis added).

122.    The Shareholder Agreements further provide that "*no director shall bear any personal liability for any acts performed in good faith in his capacity as director or as assigned by the Board, except for willful misconduct, and/or acts in violation of Applicable laws or applicable ethical rules*". (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 8.1(h)).

123.    Accordingly, Sandeep and Vaibhav were appointed as Directors of both companies at the Board meeting of November 20, 2019. Sandeep was also appointed as the Vice Chairman of the Company. Additionally, Sanjay was appointed as Alternate Director to Sandeep and Mona Shah was appointed as Alternate Director to Vaibhav.  Atul, Ameet, and Naren Patel were the

Board representatives for Aarkish LLC, and Atul's wife Snehal Mehta was added as a non-voting director.

124.     Subsequent to the November 19, 2019 Board meeting, the Shareholder Agreements required that meetings would be held at least quarterly with at least four (4) meetings per calendar year. (Aace Pharmaceuticals & Aarkish Pharmaceuticals SHAs ¶ 8.3(a)).  Interim Board meetings were also required to be attended upon the written request of one (1) or more directors with such request specifying the matters to be discussed in reasonable detailed, and with such meeting to be held not less than five (5) days and not more than fifteen (15) days following delivery of such request. (See id., ¶ 8.3(c)).

125.     Despite the best and good faith efforts of the Infinity Principals, Atul and Ameet refused to attend or otherwise send substitutes to attend any subsequent meeting of the Board of Directors (the "**Board**").   Lacking any quorum for a Board meeting because of their non-participation, the Infinity Defendants were left unable to deliberate with Atul and Ameet regarding the critical issues and business affairs of the JCEs, including but not limited to: (i) year-end financial statements for December 31, 2019, and for the first and second quarters for 2020; (ii) ANDA filing updates; (iii) review of Atul's plans for further utilization of EB-5 Funds; (iv) review the utilization of EB-5 Funds to date; (v) a concrete timeline for compliance with each party's obligations in the Shareholders and Loan Agreements; and (vi) facility construction updates.

126.     Neither IMV nor the Infinity Principals have received any updates regarding the Aarkish Lifesciences EB-5 Project, construction updates, financial numbers, impact of the pandemic, any modifications in the business plan, effectively making it impossible for IMV to provide continuous project management, financial management and other professional services as contemplated under the Shareholder Agreement.

127.   Rather than deliver a proper accounting or otherwise confer with the Infinity Principals, as required under the Shareholder Agreements, Atul Mehta demanded that all communications be with his personal representative by the name of Steven Katz. Atul Mehta initially represented Mr. Katz to be an attorney, but later after being challenged as to Mr. Katz's status, it was revealed that Mr. Katz was not an attorney.   Atul attributed his initial misrepresentation to a misunderstanding.

128.   In an April 14, 2020 email to Messrs. Katz and Atul Mehta, Ms. Shah stated "*as the remainder of the EB-5 funds need to be released into the project, please indicate in detail, how these funds will be used. As long as the use is in in accordance with the PPM, the funds will be released to the project within the next few days*".

129.   Regardless of his standing, Mr. Katz engaged in aggressive tactics seeking to compel the Infinity Defendants to immediately release the remaining EB-5 Funds, again without any further disclosures of Plaintiffs' intended use of proceeds.

130.   Atul Mehta and Mr. Katz seized on a statement by Mona Shah in her April 14, 2020 email: "*Rebecca and I continue to be part of Infinity, as we are also the Regional Center, we believe that there is a direct conflict of interest. We therefore prefer not to be at the forefront, but elect Sanjay Dayma to speak for the group.*" (emphasis added).

131.   Thereafter, Atul Mehta and Mr. Katz threatened Mona Shah with reporting her to the Disciplinary Committee of the New York State Bar in light of her admitted multiple conflicts of interest and multiple conflicting roles in the Aarkish Lifesciences EB-5 Project, an attorney for the IMV, the EB-5 Investors, and a director in IMV, and a managing member of the NYCTRC.

132.   Upon information and belief, Mona Shah succumbed to these pressures, and reversed course, urgently demanding that the Infinity Defendants immediately release the

remaining EB-5 Funds to the Plaintiffs in contravention of the POM and without the requisite documentation and due diligence – a complete reversal of her prior communication with Atul Mehta and Mr. Katz.

133.    Further aggravating the conflict of interest, Mona Shah turned three EB-5 investors, Raj Patel, Parthive Patel, and Ravpreet Bhamra, against the Infinity Principals by claiming that unless the balance of the EB-5 funds were immediately released their pending I-526 applications would be in jeopardy.   The pressure exerted by Atul Mehta and Mr. Katz through Ms. Shah impacted the decision of thee 3 EB-5 investors, who reluctantly agreed to release the funds despite their apprehensions and worries they brought to their notice by the Infinity Principals to these 3 EB-5 investors.

134.    As a direct result of Mona Shah's and MSA Global's conflict of interest and threats by Atul Mehta and Mr. Katz, upon information and belief, Ms. Shah facilitated this split in the investors to weaken the Infinity Defendants, take control of Infinity Aarkish as the New Commercial Enterprise, and remove IMV and the Infinity Principals from all affairs of the Aarkish Lifesciences EB-5 Project completely.

135.    In a last good faith effort to resolve the escalating dispute without litigation or other formal action, on May 31, 2020, David I. Aboulafia, Esq., the prior attorney for the Infinity Defendants, sent to Atul Mehta and the Plaintiffs, a written "*Notice of Breach of Contract and Demands for Audit & Inspection of Records*"  pursuant to Sections 24.1 and 24.2 of each of the Shareholders Agreements (the "**Notice of Dispute**"). Alternative Dispute Resolution in accordance with the provisions of said Sections was requested in the May 31, 2020 letter.

136.    The Notice of Dispute further provided that pursuant to the Shareholders Agreements, the parties were required to negotiate a resolution in good faith for a period of sixty

(60) days after the Notice of Dispute. The letter proposed dates of June 15 and June 16, 2020 as dates for teleconference discussions.

137.   The subject of the Dispute stated in the May 31, 2020 letter are the failures of Aarkish LLC to perform its material obligations under the Agreements; the failures of Aarkish Pharmaceuticals and AACE Pharmaceuticals to perform their contractual and fiduciary obligations to IMV, the Board and its investors; and their failure to otherwise provide to IMV the documents and information required by the Shareholder Agreements.

138.   The breaches of the Shareholder Agreements identified in the Notice of Dispute included but are not limited to: (i) the failure of majority shareholder Aarkish LLC to contribute the sum of at least $2,100,000 to fully satisfy its required capital contribution to the JCEs; (ii) the failure to procure – and/or the failure to advise IMV of the procurement – of the granting of a State of New Jersey Business License to the JCEs under Section 6.2; (iii) the failure of Aarkish LLC to provide the Articles of Incorporation and Bylaws of the JCEs to IMV;  (iv) the failure of Aarkish LLC appointed directors to attend a Special Board Meeting noticed to be held April 29, 2020; (v) the failure of Aarkish LLC to permit the Board of Directors to formerly approve the appointment of the management personnel under Section 9.3; (vi) the failure to submit quarterly/annual financial statements, balance sheets and tax returns to the Board for approval as required under Section 16.1; (vii) the failure to engage a Board-approved independent auditor to audit financial statements as required under Section 16.1; (viii) the failure to hold and/or refusal to send Aarkish LLC appointed directors to quarterly meetings of the JCEs as required by Section 8.3; (ix) the failure to engage a registered accountant approved by the Board to issue Capital Contribution Reports and Investment Certificates, signed and sealed, under Section 5.5; (x) the failure to develop a business plan in accordance with the requirements of Article 6; (xi) the failure to

"complete the launch of the pharmaceutical business" within thirty days of all licenses and approvals being received as required under Section 6.2; (xii) the failure to allow IMV to approve permit applications submitted to government entities in writing prior to submission as required by Section 6.9; and (xiii) the failure to forward copies of correspondence to or from any government entity to IMV in contravention of Section 6.10 of the Shareholder Agreements.

139.    Lastly, the Notice of Dispute demanded the prompt "inspection, auditing and accounting of the books, tax returns, financial records, bank statements, correspondence, memorandums, resolutions, business plans, permits, applications, licenses, vouchers, insurance policies, minutes, and complete accounts" to enable IMV, a minority shareholder to ascertain the use by Plaintiffs of the EB-5 Funds and fully ascertain with transparency the affairs of both JCEs.

140.    Plaintiffs and the Plaintiff Insiders disregarded the Notice of Dispute and failed to appear at either of the attempted June 15 or June 16, 2020 meetings, and continue to disregard all requests by IMV for their right to inspect the book and records of Plaintiffs thereby necessitating this action.

### Demand and Futility Allegations

141.    Although Infinity Defendants maintain that the claims set forth herein are not derivative in light of IMV's rights under the Oppressed Minority Shareholders statute, to the extent the Court determines that the complaint contains derivative claims, the Infinity Defendants assert that a further demand, in addition to the May 31, 2020 Notice of Dispute, to Plaintiffs to pursue a litigation against Atul Mehta and Ameet Vyas would have been futile.

142.    As alleged in the foregoing, the allegations set forth herein demonstrate that Plaintiffs, through their senior officers Atul Mehta and Ameet Vyas, who also control the Board

of both JCEs, have a pattern of acting against the interests of IMV, Infinity Aarkish, the NCE, and all seven (7) EB-5 Investors.

143.    Plaintiffs, through their senior officers Atul Mehta and Ameet Vyas, who also control the Board of both JCEs, have continued to ignore and disregard the numerous requests by the Infinity Defendants for: (i) due diligence and documentation supporting their intended use of EB-5 funds; (ii) updated financial statements, balance sheets, ledger, books, and other corporate and business records regarding the Job Creating Enterprises; (iii) to send representatives to and participate in Board meeting properly noticed by IMV, and its director representatives Vaibhav and Sandeep, as required under the Shareholders Agreements.

144.    The allegations further demonstrate that the Infinity Defendants made several fruitless attempts to resolve these issues prior to instituting this action.

### FIRST COUNT
**Declaratory Judgment and Specific Performance**
**Shareholder Rights of Infinity Multiventures Inc.**

145.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

146.    IMV has fulfilled all of his duties and taken all actions necessary to earn no less than 25% of the stock of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals due to IMV as of no later than February 28, 2020, such actions including but not limited to: (i) the contributions by the seven (7) EB-5 investors of $2,350,000 deposited in the Joint Accounts for the JCEs, plus $350,000 in escrow and an additional $800,000 committed by EB-5 Investors Vaibhav and Sandeep pursuant USCIS guidelines; (ii) and sweat equity contributions in the form of project management, financial management and other professional services performed by the Infinity Principals, valued at no less than $930,750.

147.     To the extent that IMV did not deposit the entire $1,500,000 capital contribution to Aace Pharmaceuticals and $3,500,000 to Aarkish Pharmaceuticals was solely due to the deliberate obstruction committed by Plaintiffs, and their senior officers Atul Mehta and Ameet Vyas, who also control the Board of both JCEs, to sabotage Infinity Aarkish's capital raising efforts in India during February 2020, and later freezing out IMV, and its director representatives, Vaibhav and Sandeep, from Board of Directors meetings, disclosures as to the financial performance of each JCE, and from otherwise participating in the affairs of Aace Pharmaceuticals and Aarkish Pharmaceuticals, as mandated under the Shareholder Agreements.

148.     Plaintiffs, and their senior officers Atul Mehta and Ameet Vyas, who also control the Board of both JCEs, have deliberately failed and refused to issue capital contribution report or investment certificates to IMV in the full amount of the stock IMV has earned in accordance with the Paragraph 5.5 of each Shareholder Agreement.

149.     Monetary damages will be insufficient to fully compensate IMV for the Defendants' breach of contract as aforesaid.

150.     Based on the foregoing, the following relief and remedies to defendant IMV are warranted: (i) Declaratory Judgment determining that IMV is the owner of a number of shares in the Company equivalent to no less than 25% of the Company's authorized shares, or such other quantity of the shares as determined by the Court; (ii) requiring each JCE to issue additional share certificates to IMV equivalent to no less than 25% of the Company's authorized shares; (c) imposition of a constructive trust over all the outstanding and authorized shares of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals shares pending a determination of the number of shares justly owned by Plaintiff; and (iv) specific performance of Defendants' agreement with Plaintiff with respect to the issuance of corporate stock to IMV each Job Creating Enterprise.

**SECOND COUNT**
**New Jersey Oppressed Minority Shareholders Statute**

151.   Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

152.   At all relevant times, defendant IMV was a minority shareholder of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals.

153.   The Shareholders Agreements provide that Plaintiff Aarkish LLC is the 58% majority shareholder of Aace Pharmaceuticals and 75% majority shareholder in Aarkish Pharmaceuticals.

154.   Atul Mehta owns and controls plaintiff Aarkish LLC.

155.   Atul Mehta is Co-Chairman and President of both JCEs, plaintiffs Aace Pharmaceuticals and Aarkish Pharmaceuticals.

156.   Ameet Vyas is the CEO and director of both JCEs, plaintiffs Aace Pharmaceuticals and Aarkish Pharmaceuticals.

157.   Atul Mehta and Ameet Vyas, have control and dominance over the day-to-day affairs of Aace Pharmaceuticals and Aarkish Pharmaceuticals.

158.   N.J. Stat. Ann. § 14A:12-7(1)(c) provides the Court with the power to fashion an equitable or monetary remedy where directors or officers have "*acted oppressively or unfairly toward one or more minority shareholders*." "*Oppression*" in this context simply means frustration of the reasonable expectations of the minority shareholders.

159.   Plaintiff Aarkish LLC, Atul Mehta and Ameet Vyas, having control of both JCEs, have abused their authority and engaged in a systematic pattern of oppressive and unfair conduct toward IMV under N.J. Stat. Ann. § 14A:12-7(1)(c), including but not limited to: (i) deliberately obstructing IMV from raising the balance of the $5 Million capital contribution and performing

the project management, financial management, and other services contemplated under the Shareholders Agreements; (ii) freezing out IMV as a minority shareholder, and effectively removing Vaibhav and Sandeep as directors, from participating in the affairs of both JCEs, as required under the Shareholders Agreements; (iii) disregard of notices of 2020 quarterly and special Board of Directors meetings rendering impossible for the Board to have the requisite quorum to discuss and make business decisions as to the JCEs; (iv) incurred million in loans not authorized by at least one of the Board of Director representatives of IMV, as required under the Shareholder Agreements, thereby wrongfully reducing and damaging the value of IMV's shareholder interest in the JCEs; (v) ongoing refusal to share financial statements, books, tax returns, financial records, bank statements, ledgers, business plans, permits, applications, licenses, agreements, contracts, and other documents to enable IMV, as minority shareholder, to ascertain the use by Plaintiffs of the EB-5 Funds and fully ascertain the affairs of both JCEs; (vi) disregard of the May 31, 2020 "*Notice of Breach of Contract and Demands for Audit & Inspection of Records*" pursuant to Sections 24.1 and 24.2 of each of the Shareholders Agreements, issued to Plaintiffs, Atul Mehta and Ameet Vyas by the prior legal counsel of Defendants; and (vii) unilaterally terminating the Shareholder and Loan Agreements without any legal or factual basis, and unlawfully seeking to force out and void IMV's rights as a minority shareholder, and Sandeep's and Vaibhav's rights as Board members of both JCEs.

160.    Upon information and belief, Plaintiff Aarkish LLC, Atul Mehta, and Ameet Vyas are deliberately oppressing and freezing out IMV, and its Board representatives, in retaliation to the repeated good faith insistence by the Infinity Defendants for proper due diligence and supporting documentation ensuring that Plaintiffs use the EB-5 Funds in accordance with the POM, and applicable immigration and securities laws.

161.    Upon information and belief, Plaintiff Aarkish LLC, Atul Mehta, and Ameet Vyas are also deliberately oppressing and freezing out IMV, and its Board representatives, to conceal their self-dealing intended unlawful misuse of the EB-5 Funds to pay off Atul's personal loans and other expenditures not related to job creating purposes, and thereby jeopardizing the cash investments, together with the I-526 applications, made by the seven (7) EB-5 Investors.

162.    The foregoing unfair and oppressive conduct committed by Plaintiff Aarkish LLC, through its senior officers, Atul Mehta and Ameet Vyas, who also control the Board of both JCEs, have frustrated the reasonable expectations of IMV as minority shareholder, pursuant to N.J. Stat. Ann. § 14A:12-7

163.    N.J. Stat. Ann. § 14A:12-7(8)(f) further empowers the Court to order Plaintiff Aarkish LLC to sell its shares in the Companies to IMV at fair market value when "fair and equitable to all parties under all of the circumstances of the case."

164.    Given foregoing unfair and oppressive conduct committed by Plaintiff Aarkish LLC, Atul Mehta and Ameet Vyas, mismanagement of the JCEs, their fraud, illegality, and oppression of defendant IMV, it is fair and equitable that Aarkish LLC be compelled to sell all of its shares in the Job Creating Enterprises to IMV under the provisions of N.J. Stat. Ann. § 14A:12-7(8)(f), and that Atul Mehta and Ameet Vyas be removed from the Board of Directors and executive positions of each JCE.

165.    In the alternative, the Court may under N.J. Stat. Ann. § 14A:12-7(8)(f) order Aarkish LLC to buy out IMV's interest in each JCE; assess the valuation of the business as of the time IMV, and its representative directors Vaibhav and Sandeep, were last able to participate properly in its affairs and order a valuation-plus-buyout by Aarkish LLC, or alternatively order the

dissolution and distribution of Aace Pharmaceuticals' and Aarkish Pharmaceuticals' assets or their cash value in favor of defendant IMV.

166.    The Court's appointment of a third-party independent custodian to preside in the stead of the directors and officers over the corporate affairs of Aarkish LLC and the two JCEs during the pendency of this litigation is warranted in accordance with N.J.S.A. § 14A:12-7, and the imposition of a constructive trust over all income and profits of the JCEs and Aarkish LLC pending the outcome of this litigation is similarly warranted.

## THIRD COUNT
### Inspection of Books and Records

167.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

168.    At all relevant times, defendant IMV was a minority shareholder of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals.

169.    Pursuant to N.J.S.A. § 14A:5-28, Plaintiffs have a statutory right to inspect the books and records of Aace Pharmaceuticals and Aarkish Pharmaceuticals upon reasonable notice.

170.    In addition to repeated oral requests to inspect the books and records of the Job Creating Enterprises, IMV has made a formal written request to Plaintiffs and Atul Mehta on May 31, 2020 pursuant to N.J.S.A. § 14A:5-28 to inspect information and documentation concerning the business and finances of both Aace Pharmaceuticals and Aarkish Pharmaceuticals.

171.    Despite these requests, Plaintiffs have wrongly and intentionally denied IMV access to the books and records of Aace Pharmaceuticals and Aarkish Pharmaceuticals.

172.    Accordingly, defendant IMV has been unlawfully deprived of information and documentation that it has a statutory right to inspect and examine.

173.    Majority shareholder plaintiff Aarkish LLC, has been the beneficiary of its fraud, unfair, and oppressive conduct committed by Plaintiffs, through its senior officers, Atul Mehta and Ameet Vyas (who also control the Board of both JCEs), against IMV and IMV's director representatives Vaibhav and Sandeep.

174.    Defendant IMV is thereby also entitled to inspect the books and records of Aarkish LLC.

175.    As a direct and proximate result of Plaintiffs' failure to provide IMV with access to Plaintiffs' books and records, IMV has sustained substantial damages of no less than $3,500,000.

## FOURTH COUNT
### Accounting

176.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

177.    Plaintiffs have failed and refused to respond in a satisfactory manner to the Infinity Defendants' repeated requests for an accounting of the business activities of both Ace Pharmaceuticals and Aarkish Pharmaceuticals.

178.    Plaintiffs have engaged in numerous acts of financial impropriety, upon information and belief some of such acts are unbeknownst to IMV and the other Infinity Defendants, in addition to those impropriates described in detail above.

179.    Majority shareholder-plaintiff Aarkish Pharmaceuticals LLC, has been the beneficiary of its fraud, unfair, and oppressive conduct committed by Plaintiffs, through its senior officers, Atul Mehta and Ameet Vyas (who also control the Board of both JCEs), against IMV and IMV's director representatives Vaibhav and Sandeep.

180.    Defendants are entitled to an accounting of any and all of its business activities for Plaintiffs for the time period from January 1, 2018 to date.

181.    As a direct and proximate result of Plaintiffs' failure to provide the Infinity Defendants an accounting of any and all of its business activities for the time period from January 1, 2018 to date, Infinity Defendants have sustained substantial damages of no less than $3,500,000.

**FIFTH COUNT**
**Breach and Wrongful Termination of Shareholders Agreements**

182.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

183.    The Shareholder Agreements are binding and enforceable obligations of Plaintiffs Aarkish Pharmaceuticals LLC, Aace Pharmaceuticals Inc., and Aarkish Pharmaceuticals NJ Inc.

184.    Despite the fact that IMV complied with its obligations under the Shareholder Agreements, Plaintiffs committed numerous breaches thereunder including but not limited to: (i) the failure of majority shareholder Aarkish LLC to contribute the sum of at least $2,100,000 in capital contributions to the JCEs; (ii) the failure to procure – and/or the failure to advise Infinity of the procurement – of the granting of a State of New Jersey Business License to the JCEs under Section 6.2; (iii) the failure of Aarkish LLC to provide the Sections of Incorporation of the JCEs to IMV;  (iv) incurring millions in loans not authorized by at least one of the Board of Director representatives of IMV, as required under Section 8.2(b); (v) the failure of Aarkish LLC appointed directors to attend a Special Board Meeting noticed to be held April 29, 2020; (vi) the failure of Aarkish LLC to permit the Board of Directors to formerly approve the appointment of the management personnel under Section 9.3; (vii) the failure to submit quarterly/annual financial statements, balance sheets and tax returns to the Board for approval as required under Section 16.1;

(viii) the failure to engage a Board-approved independent auditor to audit financial statements as required under Section 16.1; (ix) the failure to hold and/or refusal to send Aarkish LLC appointed directors to quarterly meetings of the JCEs as required by Section 8.3; (x) the failure to engage a registered accountant approved by the Board to issue Capital Contribution Reports and Investment Certificates, signed and sealed, under Section 5.5; (xi) the failure to develop a business plan in accordance with the requirements of Articles 6; (xii) the failure to "complete the launch of the pharmaceutical business" within thirty days of all licenses and approvals being received as required under Section 6.2; (xiii) the failure to allow IMV to approve permit applications submitted to government entities in writing prior to submission as required by Section 6.9; and (xiv) the failure to forward copies of correspondence to or from any government entity to IMV in contravention of Section 6.10.

185.    Plaintiffs refused to: (i) make a single payment of the Value Enhancement Fee payable to IMV in the amount of no less than $135,000 per annum; and (ii) reimburse any of the expenses incurred in connection with the Infinity Defendants' performance of its project management, financial management and professional services, in breach of Section 9.2 of the Shareholder Agreements.

186.    Aarkish LLC, Atul Mehta and Ameet Vyas, further: (i) sabotaged Infinity Aarkish's capital raising efforts, beginning in India during February 2020, to fully fund IMV's entire $1,500,000 capital contribution to Aace Pharmaceuticals and $3,500,000 to Aarkish Pharmaceuticals; (ii) obstructed IMV and the Infinity Principals from continued performance of their project management, financial management and professional services contemplated under the Shareholders Agreements; and (iii) and unilaterally terminating the Shareholder Agreements

without any legal or factual basis, and unlawfully seeking to force out and void IMV's rights as a minority shareholder, and Sandeep's and Vaibhav's rights as Board members, of both JCEs.

187.    As a direct and proximate result of Plaintiffs' breaches of the Shareholder Agreements, IMV has sustained substantial damages of no less than $3,853,625, to be fully ascertained at trial.

**SIXTH COUNT**
**Breach of Loan Agreements and Promissory Notes**

188.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

189.    The Loan Agreements, and the duly executed promissory notes incorporated therein (together with the Loan Agreements, the "**Loan Documents**"),   are binding and enforceable obligations of Plaintiffs Aace Pharmaceuticals Inc., and Aarkish Pharmaceuticals NJ Inc.

190.    Infinity Aarkish, NCE, raised and delivered $2,350,000 to the Joint Accounts for Aace Pharmaceuticals and Aarkish Pharmaceuticals, plus $350,000 to the Escrow Account

191.    Despite the fact that Infinity Aarkish , the NCE, complied with its obligations under the Loan Documents, Plaintiffs: (i) sabotaged Infinity Aarkish's capital raising efforts, beginning in India during February 2020, to complete funding of Infinity Aarkish's entire $1,500,000 loan commitments to Aace Pharmaceuticals and $3,500,000 to Aarkish Pharmaceuticals; (ii) failed to pay Infinity Aarkish interest in the amount of $164,500, calculated as 7% of the principal advanced to the JCEs, which as of the date of this Counterclaim is $2,350,000; and (iii) and unilaterally terminating the Loan Documents without any legal or factual basis, as a means of unlawfully forcing out and voiding IMV's rights as a minority shareholder, and Sandeep's and Vaibhav's rights as Board members of both JCEs.

192.    As a direct and proximate result of Plaintiffs' breaches of the Loan Documents, Infinity Aarkish, the NCE, has sustained substantial damages of no less than $3,664,500.

**SEVENTH COUNT**
**Unjust Enrichment**

193.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

194.    At all relevant times alleged herein, Plaintiffs, through Atul Mehta and Ameet Vyas, made various promises representations, written agreements, oral agreements and/or contracts, including but not limited to that Plaintiffs would fully and timely compensate the Infinity Principals for conceptualizing the Aarkish Lifesciences EB-5 Project, provide project management, financial management and other professional services necessary for Plaintiffs to remedy their financial distress, and bringing capital to the two JCEs.

195.    In reliance on Atul Mehta's and Ameet Vyas's promises, the Infinity Principals worked nearly 4,000 hours through the 4th quarter of 2018, all of 2019, and 1st quarter of 2020, providing numerous services, including: developing and implementing proper corporate governance protocols; strategic management; sourcing and raising capital, and providing other financial and management expertise, without receiving a single dollar for its services so as to not to financially burden the JCEs.

196.    The Infinity Principals provided professional services to Plaintiffs valued at $930,750 (calculated based on detailed time records maintained by each Infinity Principal since they began to collaborate with the Plaintiffs, Atul Mehta, and Ameet Vyas in mid-2018), plus an additional $87,500 in expenses incurred by the Infinity Principals in the performance of those services.

197.    At all relevant times alleged herein, in order to induce Infinity Principals to continue to provide the Services, Plaintiffs, through Atul Mehta and Ameet Vyas, violated their respective contracts and/or agreements with Defendants, by misrepresenting their intentions to fully and timely compensate the Infinity Principals, by among other things, booking the $375,000 as a liability of each Job Creating Enterprise, with the additional promise that such amounts could be credited to the capital contributions of IMV into the two JCEs.

198.    Infinity Principals detrimentally relied on the continued misrepresentations of Atul Mehta and Ameet Vyas that Plaintiffs would ultimately fully and timely compensate Infinity Principals for the foregoing services and expenses incurred.

199.    Plaintiffs received, fully enjoyed, appreciated, accepted and retained the benefits received from the professional services performed by Infinity Defendants, including the deposit of $2,350,000 by Infinity Aarkish, the NCE, in the Joint Accounts for the JCEs.

200.    Plaintiffs' acceptance and retention of the foregoing financial and monetary benefits received from Infinity Principals, without just compensation to Infinity Defendants, have unjustly enriched Plaintiffs, and it would be inequitable for them to retain the value of the benefits received from Infinity Principals, without providing just compensation to Infinity Defendants.

201.    The circumstances surrounding these situations are such that equity and good conscience require that Plaintiffs make restitution to Infinity Defendants for the benefits that Plaintiffs received from the Infinity Defendants.

202.    Plaintiffs' unjust enrichment has caused Infinity Defendants to incur significant damages has in an amount of no less than $2,700,000 plus an additional $1,018,250 in professional fees and expenses to be fully ascertained at trial.

**EIGHTH COUNT**
**Breach of the Implied Covenant of Good Faith & Fair Dealing**

203.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

204.    The Shareholder Agreements and Loan Documents are legally binding contracts that contain an implied covenant of good faith and fair dealing that Plaintiffs shall not do anything which will have the effect of: (i) destroying or misappropriating the $2,350,000 cash investments made by the seven (7) EB-5 Investors into the JCE Joint Accounts with the expectation they would be used for job creating purposes under the EB-5 program; and (ii) jeopardizing the pending I-526 applications of the seven (7) EB-5 Investors for conditional 2 year status under the EB-5 Program.

205.    Plaintiffs breached the implied covenant of good faith and fair dealing governing the Shareholder Agreements, Loan Documents, and other documents between the parties by among other misconduct: (i) refusing to provide requisite invoices, purchase or work orders, vendor names, or any other details or documents verifying Plaintiffs' intended use of the EB-5 Funds, and concealing their intended misappropriation of the EB-5 funds in contravention of the "*Use of Proceeds*" provisions of the POM, and in violation of immigration, securities, and other applicable law; (ii) demanding that EB-5 Funds be transferred to other bank accounts at Unity Bank for the Job Creating Enterprises opaque to oversight by the Infinity Defendants and EB-5 Investors; (iii) refusing to credit the $750,000 booked by Aace Pharmaceuticals and Aarkish Pharmaceuticals towards IMV's capital contributions as promised by Plaintiffs and Atul Mehta in partial consideration for the project management, financial management and other professional services provided to Plaintiffs by the Infinity Principals; (iv) entrapping the Infinity Defendants into possible immigration law violation by disbursing $100,000 each to the personal account of

Vaibhav and Sandeep  - disbursements which Vaibhav and Sandeep promptly refunded - without Plaintiff prior to such disbursement informing Infinity Defendants of the source of those proceeds; (v) abruptly, without warning or prior discussion, on February 28, 2020 emailing the Infinity Principals demanding that they cease all investor related activities, which frustrated and obstructed IMV's efforts to raise the balance of the $5 Million contribution to both JCEs; (vi) deliberately disregarding and refusing to send representatives of Aarkish LLC to Board of Director meetings; (vii) interfering with the relationship of the Infinity Defendants with MSA Global, Mona Shah, and the three (3) of the EB-5 Investors (Raj Patel, Parthive Patel, and Ravpreet Bhamra) Ms. Shah originated, and unlawfully threatening them so as to induce Ms. Shah to reverse her prior position and prevail upon these EB-5 Investors to disburse their invested EB-5 Funds to Plaintiffs without proper due diligence and backup documentation; (viii) in early 2020 terminating all direct communication with the Infinity Defendants and instead using only Steven Katz, to communicate on Plaintiffs' behalf, who in turn engaged in aggressive tactics and unlawful threats of legal action against the Infinity Defendants, Ms. Shah, and the EB-5 Investors; and (ix) unilaterally terminating the Shareholder and Loan Agreements.

206.    As a result of the breach of the implied covenant and fair dealing committed by Plaintiffs, the Infinity Defendants have sustained substantial damages of no less than $3,853,250, the full amount of which to be ascertained at trial.

## NINTH COUNT
### Fraudulent Inducement

207.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

208.    Prior to IMV entering into the Shareholders Agreements and Infinity Aarkish entered into the Loan Agreements on September 11, 2019: (i) the Infinity Principals deployed

thousands of hours providing numerous services, including: developing and implementing proper corporate governance protocols; strategic management; Infinity Aarkish sourcing and raising capital, and providing other financial and management expertise, without receiving a single dollar for its services so as to not to financially burden the JCEs; and (ii) the Infinity Defendants incurred tens of thousands of dollars in expenses incurred by the Infinity Principals in the performance of those services.

209.    The Infinity Defendants performed the foregoing services, and later executed the Shareholder Agreements and Loan Documents in detrimental reliance on the material false representations and omissions made by Plaintiffs, through their senior officers Atul Mehta, and Ameet Vyas, who also control the Board of both JCEs, including that: (i) Plaintiffs would bring in 100% of its capital commitments in both JCEs; i.e. an amount of $5,000,000 in Aace Pharmaceuticals Inc. and $5,000,000 in Aarkish Pharmaceuticals NJ Inc; (ii) Plaintiffs would use all disbursements of EB-5 Funds in accordance with the POM, the EB-5 Program, and all applicable immigration and securities laws; (iii) Plaintiffs would credit the $750,000 booked by Aace Pharmaceuticals and Aarkish Pharmaceuticals towards IMV's capital contributions as promised by Plaintiffs and Atul Mehta; (iv) Plaintiffs would fully disclose financial statements, balance sheets, ledgers, books, and tax returns, and all other records of the affairs of the JCEs to enable Infinity Defendants to monitor the use of the EB-5 proceeds to protect the interests of the EB-5 investors; and (v) Plaintiffs would not engage in any transactions that would jeopardize the pending I-526 applications of the EB-5 Investors, or otherwise in violation of the EB-5 Program, and all applicable immigration and securities laws.

210.    But for the false material representations and omissions made by Plaintiffs, Atul Mehta, and Ameet Vyas: (i) IMV would not have entered into the Shareholder Agreements on

September 11, 2019; (ii) Infinity Aarkish would not have entered into the Loan Documents on September 11, 2019; (iii) Infinity Defendants to make $2,700,000 in EB-5 funds available in the Joint Accounts for the Job Creating Enterprises (less the $350,000 to held back under the POM's Holdback provisions), from which $850,000 was disbursed to Lupaks Construction per the instructions of Plaintiffs and Atul Mehta; or (iv) that Infinity Principals continued to perform project management, financial management and other professional services, amassing to nearly 4,000 hours, without any compensation from Plaintiffs.

211.    As a direct and proximate result of the fraudulent inducement committed by Plaintiffs, the Infinity Defendants have sustained substantial damages of no less than $3,853,250, the full amount of which to be ascertained at trial.

## TENTH COUNT
### Common Law Fraud

212.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

213.    At all times relevant herein, Plaintiffs, through their senior officers Atul Mehta, and Ameet Vyas, who also control the Board of both JCEs, deliberately and intentionally made false and material misrepresentations and omissions including that Plaintiffs: (i) would use all disbursements of EB-5 Funds in accordance with the POM, the EB-5 Program, and all applicable immigration and securities laws; (ii) would credit the $750,000 towards IMV's capital contributions to the JCEs already booked by Aace Pharmaceuticals and Aarkish Pharmaceuticals as long term liabilities payable to IMV for the professional services of the Infinity Principals; (iii) would fully disclose financial statements, balance sheets, books, ledgers, and tax returns, and all other business records of the affairs of the JCEs to enable Infinity Defendants to monitor the use of the EB-5 proceeds to protect the interests of the EB-5 investors; and (iv) not engage in any

transactions that would jeopardize the pending I-526 applications of the EB-5 Investors, or otherwise in violation of the EB-5 Program, and all applicable immigration and securities laws.

214.    Rather than abide by their representations, Plaintiffs instead: (i) concealed their self-dealing intended unlawful misuse of the EB-5 Funds to pay off Atul Mehta's personal loans and other expenditures not related to job creating purposes, and thereby jeopardizing the cash investments and the pending I-526 applications made by the seven (7) EB-5 investors; (ii) demanded that EB-5 funds be wired to other bank accounts at Unity Bank for the Job Creating Enterprises opaque to oversight by the Infinity Defendants and EB-5 Investors; (iii) deprived IMV of the $750,000 credit towards its capital contribution to the JCEs, which each JCE previously booked a liabilities payable to IMV, as consideration for the services of Infinity Principals; (iv) concealed financial statements, balance sheets, ledgers, books, and tax returns, and all other business records of the affairs of the JCEs needed to enable Infinity Defendants to monitor the use of the EB-5 proceeds to protect the interests of the EB-5 investors; and (v) entrapping the Infinity Defendants into possible immigration law violation by disbursing $100,000 each to the personal account of Vaibhav and Sandeep  - disbursements which Vaibhav and Sandeep promptly refunded - without informing Infinity Defendants of the source of those proceeds.

215.    As a direct and proximate result of the fraud committed by Plaintiffs, the Infinity Defendants have sustained substantial damages of no less than $3,853,250, the full amount of which to be ascertained at trial.

## ELEVENTH COUNT
### Tortious Interference with Contractual Relations

216.    Defendants repeat the allegations contained in all of the preceding paragraphs of this Counterclaim as if fully set forth herein.

217.    The Infinity Defendants had contracts and agreements with MSA Global, Aria Strategies, and NYC Transportation Regional Center, LLC, all of which are owned, and or controlled by Mona Shah, Esq. (together the "**Mona Shah Entities**"), pursuant to which Mona Shah and Rebecca Singh agreed to provide the Infinity Defendants with: (i) with legal representation, advice and assistance with the objective of Infinity Defendants in connection with the Aarkish Lifesciences EB-5 Project meeting the statutory requirements of the EB-5 Immigrant Program; (ii) preparing the POM, Subscription Agreements, and other documents in connection with the Offering of Membership Interests by Infinity Aarkish; (iii) drafting and finalizing the Shareholder Agreements, and Loan Documents; and (iv) preparing and filing with the USCIS I-526 petitions on behalf of the EB- Investors.

218.    Infinity Aarkish, the NCE, also have binding and enforceable Subscription Agreements with the seven (7) EB-5 Investors who have purchased Membership Interests in Infinity Aarkish and contributed over $2,700,000 to the Aarkish Lifesciences EB-5 Project under the terms of the Subscription Agreement, and other terms and conditions set forth in the POM and other Offering Documents.

219.    At all times relevant herein, Plaintiffs, through their senior officers Atul Mehta, and Ameet Vyas, and designated agent Steven Katz, have tortiously interfered with the relationship of the Infinity Defendants with MSA Global, Mona Shah, and the three (3) of the EB-5 Investors (Raj Patel, Parthive Patel, and Ravpreet Bhamra), and unlawfully threatened them so as to induce Ms. Shah to reverse her prior position and prevail upon these EB-5 Investors to disburse their invested EB-5 Funds to Plaintiffs without proper due diligence and backup documentation.

220.    As a direct and proximate result of Plaintiffs' tortious interference with the Infinity Defendants' agreements and contracts with the Mona Shah Entities and the EB-5 Investors, the

Infinity Defendants have sustained substantial damages of no less than $3,500,000, the full amount of which to be ascertained at trial.

WHEREFORE Defendants INFINITY MULTIVENTURES INC., a Delaware Corporation, INFINITY AARKISH VENTURES, LLC, a New York Limited Liability Company, SANJAY DAYMA, SANDEEP MEHTA and VAIBHAV MANEK (together, "**Infinity Defendants**") seek the entry of judgment against Plaintiffs AACE PHARMACEUTICALS INC, a New Jersey Corporation, AARKISH PHARMACEUTICALS NJ INC, a New Jersey Corporation, and AARKISH PHARMACEUTICALS LLC, a New Jersey Limited Liability Company as follows:

A) Declaratory Judgment determining that IMV is the owner of a number of shares in the Company equivalent to no less than 25% of the Company's authorized shares, or such other quantity of the shares as determined by the Court; (ii) requiring each of Aace Pharmaceuticals and Aarkish Pharmaceuticals to issue investment certificates to IMV equivalent to no less than 25% of the Company's authorized shares; (c) imposition of a constructive trust over all the outstanding and authorized shares of each of Aace Pharmaceuticals and Aarkish Pharmaceuticals shares pending a determination of the number of shares justly owned by Plaintiff; and (iv) specific performance of Defendants' agreement with Plaintiffs with respect to the issuance of corporate stock to IMV as to each of Aace Pharmaceuticals and Aarkish Pharmaceuticals.

B) Declaratory Judgment determining that Plaintiff Aarkish LLC, in its capacity as majority shareholder of Plaintiffs Aace Pharmaceuticals and Aarkish Pharmaceuticals, engaged in unfair and oppressive conduct, has frustrated the reasonable expectations of IMV as a minority shareholder, as contemplated under N.J.S.A. § 14A:12-7.

C) Order that pursuant to  N.J. Stat. Ann.§ 14A:12-7(8) plaintiff Aarkish LLC shall sell its shares in the Job Creating Enterprises to IMV at fair market value within ten (10) days, and if the parties are unable to agree on fair value within forty (40) days of entry of the order, the court shall make the determination of the fair value, and the provisions of sections N.J.S.A. § 14A:11-8 through 14A:11-11 shall be followed insofar as they are applicable.

D) Order in the alternative under N.J. Stat. Ann.§ 14A:12-7(8) that Aarkish LLC to buy out IMV's interest in each JCE; assess the valuation of the business as of the time IMV, and its representative directors Vaibhav and Sandeep, were last able to participate properly in its affairs and order a valuation-plus-buyout by Aarkish LLC, or alternatively order the dissolution and distribution of Aace Pharmaceuticals' and Aarkish Pharmaceuticals' assets or their cash value in favor of defendant IMV.

E) Order the removal of Atul Mehta and Ameet Vyas as directors and officers of both Aace Pharmaceuticals and Aarkish Pharmaceuticals.

F) That the Court appoint a third-party independent custodian in the stead of the directors and officers to preside over the corporate affairs of Aarkish LLC and the two Job Creating Enterprises in accordance with N.J.S.A. § 14A:12-7, and that a constructive trust be imposed over all income and profits of the JCEs and Aarkish LLC.

G) An Order directing that Plaintiffs immediately disclose and make available for inspection and photocopying by Infinity Defendants all books and business records of Aarkish LLC and both Job Creating Entities, with such records, including but not limited to financial statements, books, tax returns, financial records, bank statements,

ledgers, business plans, permits, applications, licenses, minutes, resolutions, contracts, and agreements related to each Plaintiff.

H) An Order that Plaintiffs immediately provide the Infinity Defendants an accounting of any and all of their business activities of the JCEs and Aarkish LLC for the time period from January 1, 2018 to date.

I) An Order finding that Plaintiffs materially breached and terminated the Shareholder Agreements and Loan Documents and awarding compensatory damages of no less $3,853,625 plus an additional $164,500.00 in Interest owed by Aace Pharmaceuticals and Aarkish Pharmaceuticals under the Promissory Notes.

J) An Order finding that Plaintiffs were unjustly enriched from the professional services performed by the Infinity Defendants thereby entitling the Infinity Defendants to compensatory damages no less than $2,700,000 plus an additional $1,018,250 in professional fees and expenses, the total amount of which to be fully ascertained at trial.

K) An Order finding that Plaintiffs breached their implied covenants of good faith and fair dealing implicit in the Shareholder Agreements and Loan Agreements and awarding compensatory damages of no less $3,853,250, the total amount of which to be fully ascertained at trial.

L) An Order finding that Plaintiffs fraudulently induced: (i) IMV to enter into the Shareholder Agreements; (ii) Infinity Aarkish to enter into the Loan Documents; (iii) Infinity Defendants to make $2,700,000 in EB-5 funds available in the Joint Accounts for the Job Creating Enterprises (less the $350,000 to held back under the POM's Holdback provisions); and (iv) Infinity Principals continue to perform project

management, financial management and other professional sources, amassing to nearly 4,000 hours, without any compensation from Plaintiffs and awarding compensatory damages of no less $3,500,000, the total amount of which to be fully ascertained at trial, plus punitive damages under the New Jersey Punitive Damages Act, <u>N.J.S.A.</u> 2A:15-5.9, *et seq.,* and to the fullest extent available under applicable law.

M) An Order finding that Plaintiffs defrauded the Infinity Defendants and awarding compensatory damages of no less $3,500,000, the total amount of which to be fully ascertained at trial, plus punitive damages under the New Jersey Punitive Damages Act, <u>N.J.S.A. 2A:15-5.9</u>, *et seq.,* and to the fullest extent available under applicable law.

N) An Order finding that Plaintiffs tortiously interfered with the Infinity Defendants' agreements and contracts with the Mona Shah Entities and the EB-5 Investors and awarding compensatory damages of no less $3,500,000, the total amount of which to be fully ascertained at trial.

O) Pre-judgment and Post-judgment interest to the extent available under applicable law.

P) Order awarding attorney's fees and costs associated with this litigation.

Q) Order for such other and further relief that the Court deems just, proper and equitable.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Defendants hereby demand a trial by jury on all issues and cause of action raised in this Counterclaim triable by jury.

Dated: January 7, 2021
    New York, New York

Respectfully submitted,

LAW OFFICES OF JORGE SALVA, PLLC

/s/ Jorge R. Salva

By: _____

   Jorge R. Salva, Esq. (JS 0702)
    *Attorney for Defendants Infinity*
    *Multiventures Inc., Infinity Aarkish*
    *Ventures, LLC, Sandeep Mehta,*
    *Vaibhav Manek and Sanjay Dayma.*